39 C.C.P.A.(Patents)
## Application of BLUE LAKE PRODUCERS COOPERATIVE.

Patent Appeal No. 5847.

United States Court of Customs and Patent Appeals.

Jan. 29, 1952.

Kimmel & Crowell, George P. Kimmel, and A. Harry Crowell, all of Washington, D. C., for appellant.

E. L. Reynolds, Washington, D. C. (H. S. Miller, Washington, D. C., of counsel), for Commissioner of Patents.

Before GARRETT, Chief Judge, and JACKSON, O'CONNELL, JOHNSON, and WORLEY, Judges.

O'CONNELL, Judge.

This is an appeal taken pursuant to the provisions of the Act of July 5, 1946, 15 U.S.C.A. § 1051 et seq., from the decision of the Examiner-In-Chief of the Board of Appeals of the United States Patent Office who, substituting for the Commissioner of Patents by the delegation of his duties respecting trade-mark appeals and the determination thereof,[1] affirmed the action of the Examiner of Trade-Marks refusing to register on the supplemental register the mark "Oregon's Finest" for use in commerce with canned and frozen vegetables. The ground of the refusal was that the described mark which appellant sought to register is confusingly similar to the unabandoned mark "Oregon Fruit Products" previously registered, pursuant to the provisions of the Act of March 19, 1920, and used in commerce by another with canned fruits, preserves, and jams.

The affirmance of the examiner's decision was based on the conclusion expressed in the following decision of the Examiner-In-Chief: "The words 'Fruit Products,' which appear in the [prior] registration, are written in small letters and constitute merely a broad description of the goods, and hence the word 'Oregon' is the dominant part of the registered mark. The applicant's mark 'Oregon's Finest' applied to canned and frozen vegetables is considered to be confusingly similar to the mark of the prior registration applied to the closely related goods, canned fruits, fruit preserves and fruit jams, notwithstanding the presence of the words 'Fruit Products.'"

The owner of a trade-mark used in commerce may register his mark on the principal register established by section 1 of the Act of 1946, or he may register his mark on the supplemental register, established by section 23 of the same act and kept by the commissioner in continuation of the register provided in section 1, paragraph (b), of the Act of March 19, 1920, 15 U.S.C. § 121, now 15 U.S.C.A. §§ 1051 note, 1091, 1126.

Section 45 of the Act of 1946, fourth paragraph, officially defines the "principal register" as the register provided by sections 1 through 22 of the Act of 1946 and construes the "supplemental register" to be the register provided by sections 23 through 28 thereof. The principal register established by the provisions of sections 1 through 22 of the new act, just described, is, in general, a continuation of the register of marks under the Trade-Mark Act of February 20, 1905, 15 U.S.C. sections 81–120, now 15 U.S.C.A. § 1051 et seq.[2]

Our primary concern in the case at bar relates to the supplemental register and that portion of the first paragraph of section 23 which reads: "* * * All marks capable of distinguishing applicant's goods or services and not registrable on the princi-

1. During the vacancy then pending in the office of the Assistant Commissioner of Patents, the hearings and determination of appeals in the United States Patent Office in trade-mark cases were delegated to the members of the Board of Appeals by an order of the Secretary of Com-

merce, published September 28, 1950, 15 Federal Register 6554, and October 17, 1950, 639 O.G. 643, under the provisions of Reorganization Plan No. 5 of 1950, 15 Federal Register 3174.

2. Robert, The New Trade-Mark Manual, 1947, pages 39, 53, and 63.

pal register herein provided, except those declared to be unregistrable under paragraphs (a), (b), (c) and (d) of section 2 of this Act, which have been in lawful use in commerce by the proprietor thereof, upon or in connection with any goods or services for the year preceding the filing of the application may be registered on the supplemental register upon the payment of the prescribed fee and compliance with the provisions of section 1 so far as they are applicable."

Those grounds which proscribe the registration of an applicant's mark under paragraphs (a), (b) and (c) of section 2 of the Act are nowise here in issue. The sole question presented involves paragraph (d) of section 2 which, so far as pertinent, provides that no trade-mark by which the goods of the applicant may be distinguished from the goods of others shall be refused registration unless it "(d) Consists of or comprises a mark which so resembles a mark registered in the Patent Office or a mark or trade name previously used in the United States by another and not abandoned, as to be likely, when applied to the goods of the applicant, to cause confusion or mistake or to deceive purchasers * *."

■ The obvious purpose of the provisions of paragraph (b) of the Act of 1920 was to widen the eligibility of marks for American and foreign users thereof by authorizing, among other things, the registration of wholly descriptive and merely geographical terms and enabling the marks to be registered at home and abroad. Armstrong Paint & Varnish Works v. Nu-Enamel Corp., 305 U.S. 315, 323, 330, 59 S.Ct.

191, 83 L.Ed. 195. The Act of 1946 provides for a continuation of that purpose and procedure and is said to correct many of the deficiencies of the Act of 1920.[2]

■ The word "Oregon" is geographically descriptive. The additional words which constitute the remainder of the mark relied upon by the tribunals of the Patent Office in rejecting applicant's mark, "Fruit Products," are primarily descriptive of those products. There can be no monopoly or exclusive use of a geographically descriptive or misdescriptive word.[3] The geographic term in the competing marks denotes the place of origin of the goods, but that term and all of the other descriptive words or terms thereof cannot, except as provided by the supplemental register, perform the essential trade-mark function of denoting the "personal origin," producer or trader with respect to the merchandise with which the marks are used.[4]

■ A descriptive term cannot serve as the dominant part of a mark.[5] The tribunals of the Patent Office have concurrently held otherwise. The only obligation resting upon the applicant in the instant case was to identify its product lest it cause confusion in trade and be mistaken for the product of the owner of the cited mark.[6] The applicant has accomplished that result. Its mark when considered in its entirety, as it must be, is wholly different from the cited mark in sound, meaning, and appearance.

The decision of the commissioner is accordingly reversed.

Reversed.

2. Robert, The New Trade-Mark Manual, 1947, pages 39, 53, and 63.

3. Otard, Inc., v. Italian Swiss Colony, 141 F.2d 706, 31 C.C.P.A.,Patents, 955; California Piece Dye Works v. California Hand Prints, Inc., 159 F.2d 871; 34 C.C.P.A., Patents, 907; Kraft Cheese Co. v. Coe, 79 U.S.App.D.C. 297, 146 F.2d 313.

4. Baglin v. Cusenier Co., 221 U.S. 580, 31 S.Ct. 669, 55 L.Ed. 863; Delaware & Hudson Canal Company v. Clark, 13 Wall. 311, 20 L.Ed. 581; Hall v. Pennzoil Co., etc., 126 F.2d 506, 29 C.C.P.A., Patents, 933; California Apparel Creators v. Wieder of California, 2 Cir., 162 F.2d 893, 174 A.L.R. 481.

5. Nestle's Milk Products, Inc., v. Baker Importing Company, Inc., 37 C.C.P.A. Patents, 1066; American Brewing Co. v. Delatour Beverage Corp., 100 F.2d 253, 26 C.C.P.A., Patents, 778.

6. Kellogg Co. v. Nat. Biscuit Co., 305 U.S. 111, 59 S.Ct. 109, 83 L.Ed. 73.