**PAUL SACHS ORIGINALS CO., a corporation, Plaintiff,**

v.

**John SACHS and Leo Hirsch, doing business as Sachs of California, a partnership, Defendants.**

Civ. No. 881-61-S.

United States District Court
S. D. California,
Central Division.

March 29, 1963.

- - - ◇ - - -

Flam & Flam, Los Angeles, Cal., and Ralph W. Kalish, St. Louis, Mo., for plaintiff.

Fendler, Lerner & Warner, Beverly Hills, Cal., for defendants.

STEPHENS, District Judge.

This is an action for trademark infringement and unfair competition brought by Paul Sachs Originals Co., a corporation, against John Sachs and Leo Hirsch, doing business as Sachs of California, a limited partnership.

■ This Court has jurisdiction of the controversy pursuant to Title 15, Chapter 22, United States Code, Section 1121, and also pursuant to Title 28 United States Code Section 1338(a) and 1338 (b), by reason of the fact that the suit is of a civil nature between residents of different states, in which plaintiff claims the amount in controversy exceeds the sum of $10,000.00, exclusive of interest and costs. The residence of each of the parties is referred to below.

The case was tried before the Court sitting without a jury. Plaintiff appeared by its officers in person and by its counsel, Flam & Flam and Ralph W. Kalish, Esq., and the defendants appeared in person and by their counsel, Harold A. Fendler, Esq. and Douglas Fendler, Esq. Oral and documentary evidence was introduced by the respective parties

on May 22, 23, 24 and 25, 1962. At the request of counsel, time was allowed for the submission of briefs. The Court, having considered the evidence, the arguments of counsel and the briefs submitted, ordered judgment in favor of defendants and requested counsel for defendants to prepare Findings of Fact, Conclusions of Law and Judgment.

The Findings of Fact, Conclusions of Law and Judgment proposed by defendants' counsel were complained of so bitterly as being entirely one sided and incomplete that the preparation of a Memorandum of Decision which can serve also as Findings of Fact and Conclusions of Law appears to be the only hope of recording the basis for the Court's decision.

Plaintiff, a Missouri corporation having its office and principal place of business in the City of St. Louis, State of Missouri, is a successor in business of Paul Sachs Originals, Inc. For purposes of brevity, references to plaintiff herein shall encompass and comprehend any activities of its aforesaid predecessor.

On or about May 15, 1942, plaintiff adopted the term "Paul Sachs Original" as a trademark to make known and identify ladies' and misses' dresses and suits which it produced and sold. The said trademark was used in conjunction with plaintiff's merchandise, being applied to the goods by means of a cloth label (Exhibit 3) stitched to the neck of the garments and by a hang tag (Exhibit 4) suitably suspended from the garments. The aforesaid trademark was the only trademark used by plaintiff until August 14, 1959, when it adopted and commenced using the trademark "Don Sachs Original" to distinguish another line of ladies' and misses' dresses. This trademark was also presented by means of a cloth label sewn to the neck of garments (Exhibit 5) and by a hang tag (Exhibit 6). For the twenty years encompassed by the period May 15, 1942 until May 22, 1962, the opening date of the trial of this action, plaintiff never sold a dress or any other article of wearing apparel which was not identified either by the trademark "Paul Sachs Original" or "Don Sachs Original". Plaintiff's entire business has been devoted to the production and sale of ladies' and misses' dresses and suits under these trademarks.

The trademark "Paul Sachs Original" was registered in the United States Patent Office on October 12, 1948, Registration No. 502,925, in accordance with the provisions of Section 2(f) of the Trademark Act of 1946 (Lanham Act); and, as Affidavits under Sections 8 and 15 of said Act were filed in the Patent Office on October 22, 1953, said registration has become incontestable. The aforesaid registration disclaimed any exclusive right to the word "Original" apart from the mark as shown and described. The plaintiff caused the trademark "Don Sachs" to be registered in the United States Patent Office on December 6, 1960, Registration No. 708,-120, under Section 2(e) of the aforesaid Act. The application which matured into said registration was published in the Official Gazette of the United States Patent Office on September 20, 1960.

Plaintiff's trademark "Paul Sachs Original" has been used continuously upon dresses which are characterized in the trade as misses' dresses, and being in sizes 10 to 20, while the trademark "Don Sachs Original" has been used by plaintiff upon dresses which are characterized as petites, and being in sizes 8 to 18. As early as November 15, 1942, plaintiff advertised its dresses under the trademark "Paul Sachs Originals" on a national level to the consuming public, as evidenced by its advertisement in Vogue magazine (Exhibit 7). Plaintiff continued through the 1940's and early 1950's to advertise in national consumer publications, such as Vogue, Mademoiselle, and Charm (See Exhibits 10 to 34, inc., 36, 38, 40–44, 47, 49). In the middle 1950's plaintiff apparently temporarily suspended national advertising in view of certain internal circumstances, but resumed such national consumer advertising in Vogue magazine on February 15, 1960 (Exhibit 25), and has periodi-

cally advertised in said magazine since said date. Plaintiff has consistently supplied advertising mats (Exhibits 72–74, inc.) free of charge to its customers so that local advertisements of plaintiff's goods might be made. Evidence of such local advertisements with respect to California was submitted as Exhibits 59 to 63, inclusive. Plaintiff has always arvertised in trade journals which are designed for dress buyers of department stores and speciality shops.

Plaintiff's annual sales for its dresses under the aforesaid trademarks for the years 1942 to date have exceeded $1,500,-000.00, and during this period of time plaintiff has expended a total of $400,-000.00 to advertise and publicize its garments under the said trademarks. Plaintiff operates and maintains showrooms for its "Paul Sachs Original" and "Don Sachs Original" dresses in New York City, St. Louis, Missouri, and Dallas, Texas.

Since its first use of the trademark "Paul Sachs Original" in 1942, plaintiff has sold its dresses identified by said trademark throughout the entire United States, so that its operations have been on a national basis for each of the intervening twenty years. Dresses identified by plaintiff's trademark "Don Sachs Original" have been sold on a national basis since 1959. Plaintiff has consistently maintained eight full-time salesmen and three representatives for selling its "Paul Sachs Original" and "Don Sachs Original" lines throughout the United States. Currently, plaintiff sells its "Paul Sachs Original" and "Don Sachs Original" dresses to an estimated twelve hundred accounts, and it is estimated that during the last ten years plaintiff has sold said merchandise to over twenty-five hundred different accounts. Presently, plaintiff sends its advertising pieces and like publicity matter relative to its "Paul Sachs Original" and "Don Sachs Original" dresses to a mailing list of over thirteen thousand five hundred prospective accounts.

The wholesale price range of plaintiff's "Paul Sachs Original" and "Don Sachs Original" dresses is from $10.75 to $39.-75.

One of plaintiff's representatives, Mr. Eddie Silk, of Los Angeles, who testified with respect to plaintiff's operations in the State of California, stated that during the ten years he had represented plaintiff in the State of California, the sales of "Paul Sachs Original" dresses and, latterly, "Don Sachs Original" dresses as well, averaged in California annually $100,000.00 at wholesale; that during said period of time, he had sold plaintiff's dresses bearing the aforesaid trademarks to an estimated three hundred California accounts; and that he would estimate that during the said period he had one hundred active accounts annually for such merchandise. Plaintiff has sold its merchandise under the aforesaid trademarks in over seventy-five different cities in the State of California, with the annual number being between sixty and seventy. In plaintiff's advertisements in Vogue (Exhibits 26, 28 and 30), plaintiff gave what are known as store credits to stores carrying its merchandise in the cities of Sacramento, Glendale, and Los Angeles, California. During his ten years with the firm, Mr. Silk has exhibited plaintiff's merchandise as identified by its trademarks, five times annually at the Pacific Coast Travelers Association Market Weeks at the Biltmore Hotel in Los Angeles, each such "market" having a duration of about four days. Plaintiff's merchandise has been and is being displayed equally frequently at similar markets in San Francisco, Portland, and Seattle.

To this point, the statement of facts is taken verbatum from the plaintiff's brief after trial with only one exception. Plaintiff ignored the fact that its registered trademark "Don Sachs" was never used in that form on any of the labels or hang tags in plaintiff's dresses or in its advertising. Plaintiff invariably used the word combination, "Don Sachs Original". This statement of facts has added the word, "Original" at every place where "Don Sachs" was mentioned in the plaintiff's statement except where refer-

ence is made to the registration of "Don Sachs" as a trademark as registration No. 708,120.

Trademarks are acquired by use, not by registration. The trademark in use by plaintiff, so far as the evidence shows, is "Don Sachs Original". There is no evidence in this case that the trademark registered as No. 708,120 was used by the plaintiff at any time after its registration in the form shown on the registration (Exhibit 2).

In registering the trademark, "Paul Sachs Original" plaintiff disclaimed the word, "Original", in the following words, "no exclusive claim being made to the word 'Original' *apart from the mark as shown and described*." (See Exhibit 1, emphasis added.) By disclaimer, the word was not eliminated from the trademark. As a consequence of having disclaimed the word "Original" in the "Paul Sachs Original" trademark and not having claimed the word at all as a part of the trademark registered as No. 708,120, plaintiff has chosen to ignore the existence of this word as a part of its trademark and has organized its case as though this word should be totally disregarded.

The argument then proceeds to assert that the surname, "Sachs" is dominant in each mark and that the word, "Sachs" is also dominant in "Sachs of California" and, therefore, there is likelihood of confusion.

The Court finds as a fact that the word "Sachs" in plaintiff's trademark "Paul Sachs Original" has never been given any emphasis or predominance over the Christian name "Paul" and both names have always been depicted and used in the same style, size, color, lettering and appearance as the name "Sachs". Both names have always been given equal importance and have been displayed and shown together, which, with the addition of the word "Original" have invariably been displayed and shown together as a single integrated trade name and trademark and substantially every use and advertisement has utilized all three words, "Paul Sachs Original".

The same is true of the trademark "Don Sachs Original". The surname "Sachs" in the trademark has never been given any emphasis or predominance over the Christian name "Don" and both names have always been depicted and used in the same style, size, color, lettering and appearance with both names given equal importance. Both names have invariably been displayed and shown together and with the word "Original" following so that the two names and the word "Original" have constituted a single integrated trademark.

Defendants John Sachs, as general partner, and Leo Hirsh, as limited partner formed a partnership known as "Sachs of California", with its principal office and place of business in the City of Los Angeles, State of California. The Articles of Partnership for defendants and a certificate of doing business under the name and style of "Sachs of California" were recorded on September 26, 1960. Defendant John Sachs is the active manager of the business, and his wife, Mrs. Hope Sachs, is the style coordinator therefor. Mr. Hirsh takes no part in the active day-to-day management of the company. Defendant partnership produces and sells dresses which defendants have characterized as "young missy" and have sold same since September, 1960, to department stores and women's specialty shops. Defendant attaches to each of its dresses a cloth label (Exhibit A) and a hang tag (Exhibit B), each of which shows the term "Sachs of California". Defendants' dresses are produced in sizes 8 to 18, and the same sell at wholesale in the range $6.75 to $14.75. Defendants have never used the single word "Sachs", but at all times have utilized all three words of their firm name, "Sachs of California" on all labels, hang tags, correspondence and otherwise.

Defendants' dresses are displayed at the Pacific Coast Travelers Association Market Weeks at the Biltmore Hotel in Los Angeles, and they maintain a showroom in the City of Los Angeles. Defendants have sold their dresses in forty-one states, but the major portion of their operation to date has been with the State of California, wherein approximately seventy-five percent of their business is conducted. Defendants have sold their dresses to some one hundred seventy-five to two hundred accounts in California, and have about three hundred to four hundred accounts outside the State of California. Representative accounts are Haggarty's, Bullock's, May Company, Harris & Frank, Bond's, Zukor's, Foreman & Clark, in Los Angeles; The Emporium in San Francisco; the Marston Company and the May Company in San Diego; Filene's and Stern's in Boston, Massachusetts; Franklin Simon in New York City; Winkleman's and J. L. Hudson Company in Detroit, Michigan; and Gimbel's in Pittsburgh, Pennsylvania.

The term "Sachs of California" is in part descriptive of the geographical origin and place of manufacture of all of the goods manufactured by defendants.

When "Sachs of California" was organized in September, 1960, neither defendant John Sachs, nor his limited partner, Leo Hirsch, had any knowledge from any source concerning the existence of plaintiff or the existence of the trademarks "Paul Sachs Original" or "Don Sachs Original". No search was made in the Patent Office to ascertain whether or not the name "Sachs of California" would be similar to any registered trademark and although defendants may be charged with constructive notice of registered trademarks Nos. 502,925 and 708,120, they had no actual knowledge of their existence or use.

The name "Sachs of California" was adopted by said limited partnership because it was the family name of the sole general partner, John Sachs, which name had been used in connection with the garment industry in Europe since 1868, and particularly by John Sachs' grandfather in Berlin, Germany, where the store was known as "Sachs".

For two years, commencing approximately 1951, defendant John Sachs was a salesman throughout the State of California for a dress manufacturer known as "Sun Maid of California"; during the next three years, defendant John Sachs was Sales Manager for "Lou-Ette Originals", a California company which manufactured and sold, on a nationwide basis, a particular type of dress known as "young missy", and during this period of time defendant John Sachs commenced to design and style women's "young missy" dresses; during the next three years defendant John Sachs was a partner in a company known as "Steffi of California", which specialized in the manufacture of the "young missy" type of dress, and said company had several hundred accounts both inside and outside the State of California.

Since 1951, and particularly while defendant John Sachs was engaged in business for himself under the name of "Steffi of California", he did business with approximately a dozen buying services which maintained offices in the City of Los Angeles, each of which arranges for the purchase of dresses for their respective clients numbering for each buying service from fifty to three hundred stores located in various parts of the country. A large segment of the business done by defendant Sachs of California consists of sales made through those same buying services with which defendant John Sachs previously did business under the name of "Steffi of California".

At all times since its organization in September, 1960, the limited partnership "Sachs of California" has been a member-manufacturer of an organization known as "California Fashion Creators", which is an organization restricted to California manufacturers which twice each year exhibits California-manufac-

tured merchandise at markets held in the State of California, which are attended by buyers from various parts of the United States and foreign countries. From 30% to 35% of the total annual business done by defendant "Sachs of California" consists of purchases made by store buyers who attend these markets held by California Fashion Creators.

The Court finds that customers within the State of California frequently purchase dresses manufactured in California because they believe that merchandise originating in California will be designed to specially suit the California resident; and customers outside the State of California will frequently purchase California-made merchandise because of special sales promotion, exploitation, and advertising utilized by California manufacturers in conjunction with Eastern and Mid-Western retail stores featuring California-made merchandise for limited periods of time each year.

The words "of California" attached to a dress label have acquired special value as the result of fifteen years of advertising, publicity and promotion which have established in the public mind the distinctive nature of the California market and have attracted attention to the State of California as the source of goods. The use of the words "of California" constitutes an added value and is a "plus factor" in selling merchandise. Defendants adopted the term "of California" to establish the origin and place of manufacture of their goods and to take full advantage of, and benefit from, the widespread national advertising and promotion of California-made goods.

The first notice of any nature received by defendants or either of them concerning the existence of plaintiff, or its merchandise or trademarks, was by notice in writing dated June 7, 1961, sent by plaintiff to defendants, objecting to defendants' use of the name "Sachs of California". At the time this notice was received by defendants, their firm "Sachs of California" had become well established and their products and trade name well known to the trade both within and without the state of California.

"Sachs of California" is the trade name of the defendants and also their trademark. It is used as a trademark and since a trademark is created by usage and not registration, it now constitutes a non-registered trademark, referred to generally as a "common law trademark". The evidence established that "Paul Sachs Original" sizes are from 10 to 20 and that "Don Sachs Original" sizes are from 8 to 18. The "Paul Sachs Original" is produced in what is termed "misses" dresses and the "Don Sachs Original" is produced in "petite" dresses. "Sachs of California" dresses are in sizes from 8 to 18 and are characterized by defendants as "young missy" dresses.

There is no rigid standard by which women's ready-to-wear dress sizes are measured. Each manufacturer labels his own product and while reasonable conformity is a business necessity, there is a considerable variance. The same is true as to the types of women's dresses recognizable by names such as "petite" or "missy". Such names are intended to describe a type of figure the dress will fit and as such is a key to size. The numbered size is also indicated along with the type name. Some reasonable conformity is found in this area also, but there is a considerable variance among different manufacturers. Each manufacturer strives for consistency in his own goods when a popular size combination is developed.

Because of the variances indicated, the factors which go into producing a "petite" size 10, for example, are not established by the trade, although the "petite" is recognized by the trade. The Court does not intend by this memorandum to attempt a definition of any size of women's dress in such a way as to constitute a precedent. On the other hand, the elements which combine to indicate to

a woman retail shopper approximately what she might expect to fit her are represented by factors which were disclosed by the testimony and are discussed below.

Just as there is no absolute conformity among manufacturers, there was not uniformity among the witnesses. The testimony was in part conflicting and in part simply different enough to defy point by point comparison. It simply represented the trade's differences. All of the testimony considered, however, a general pattern appears. In arguing against the realities of the situation, plaintiff assumes that the trademarks of the parties are identical, indulging in rhetorical argument premised upon this obvious fiction. The fact is that unless the likelihood of confusion between the marks of the parties is based upon something not readily apparent, something akin to an innuendo, confusion is unlikely.

The plaintiff's position that "women's clothes is women's clothes" and that the word "Sachs" in a trademark cannot be applied to women's clothes by any manufacturer but plaintiff without a resulting confusion of source of goods is not sustained by the evidence.

The size of a dress is expressed in numbers and in dress types. Within the numbered classification of sizes is another key to size. Dresses are produced in what the manufacturers refer to as "lines". Note that the "Paul Sachs Original" line is in sizes 10 to 20, while the "Don Sachs Original" line is in sizes 8 to 18. This kind of a division, overlapping as it appears to be, is recognized in the industry. If this signal is not recognized by the woman retail customer, it is recognized by the store buyers.

In the size of dresses manufactured there is a further refinement. This is recognized by characterization in named type. There may be other types, but the evidence showed that there are types referred to as: Junior, Junior Petite, Missy Petite, Young Missy, Missy and Misses dresses. The evidence shows that "Paul Sachs Original" dresses are Misses, while "Don Sachs Original" dresses are Petites.

Although the function of the type names is defined in the evidence in a way which seems to segregate the types according to age bracket, no such conclusion is warranted. A Junior Petite is designed for a woman's figure which the designer envisions as a figure which is characteristic of a very young girl. The Young Missy is designed for a woman's figure which the designer envisions as a figure which is characteristic of a young career girl. The type is idealized. Not all young career girls have young career girl figures.

Such dresses are worn by any woman who finds that the dress fits. There are limitations to this statement because the style of a Junior Petite may not prove to be appropriate for a woman who has long passed very young girlhood. But this is a matter of individual discretion and if a dress fits a woman, she is a potential customer.

Size and type as above referred to are blended in subtle fashion in a manner which the woman purchaser seems to understand. There may be some women who would find clothes to fit them in more than one type of dress, as that term is used above, but the number would be insubstantial. Plaintiff argues that one inch difference in the bustline is not a distinguishable difference, but when the difference extends to the length of the waist, the hip size and the hemline, the distinction is substantial. Definition is sought by manufacturers who strive to be known as offering dresses which combine features which will fit and be attractive to a large number of women who are seeking a particular combination of measurements which add up to their size.

All manufacturers cater to the youthful look. While the nomenclature is youthful, it seems to be covertly recognized that as women become older, their figures develop into sizes which have been characterized as being furnished

for a more mature person. Style seems to be a feature which varies from season to season, but youthful styles, alone, are furnished or advertised and all manufacturers seek to be known for youthful styles in all sizes. The woman retail buyer seeks a dress that fits and that "does something for her", an expression which connotes making her look more attractive in her eyes and generally more youthful than might ordinarily be expected.

In this complexity of terminology and meaning, each manufacturer strives to have a distinctive "line". To the extent that it is successful, the sales in part reflect the effort and the manufacturer stays with that category. Retail stores carry all of a particular name manufacturer's "line" and usually do not split it. The line is designed to fit women whose figures meet a certain combination of measurements and whose tastes are satisfied by the line offered. Into this combination is injected the element of color which will be referred to below.

When a manufacturer seeks to vary its line by appealing to women of other specifications than those catered to in an established line, it customarily gives the line a new name, as did plaintiff when it established the "Don Sachs Original" line to capitalize on the good will established by the original "Paul Sachs Original" line. To utilize this good will a name close to the one previously established had to be found and yet different enough to denominate a different line. This choice of a new name and a new size grouping 8 to 18 instead of 10 to 20 and a new type "petite" instead of "misses", indicates a recognition on the part of the plaintiff that the market is subject to recognizable division.

"Sachs of California" offers dresses in sizes 8 to 18 and in a type referred to as "young missy" which has characteristics of size which are distinguishing from the plaintiff's two lines. Witness Weishar testified that there were other manufacturers of this type of dress on both the East and West Coasts and that this type is distinguishable from "misses" dresses. This witness was singularly impressive from the standpoint of experience and candor. In this respect it is an over-simplification to argue, as the plaintiff does, that the sizes are the same since plaintiff offers sizes 8 to 20 and the defendants offer sizes 8 to 18.

Plaintiff argues that defendants' salesman observes no distinction between garments made by the respective parties because he listed defendants' dresses either as "misses" or "inexpensive misses" in the directories of Pacific Coast Traveler's Association at the "markets" held five times annually at Los Angeles. The evidence showed that there was no other category available at the "market". Plaintiff concludes that the trade, therefore, does not recognize a difference. This conclusion is unwarranted. Doubtlessly such classification is sufficient for the purpose of the "market", but insufficient for specialization which enables one manufacturer to establish a reputation in a certain line of women's ready-to-wear dresses.

Color is another element which defendants claim is a distinguishing characteristic. Defendants claim that their dresses are characteristically brighter than plaintiff's except for black dresses which both parties offer. This is illusive at best. Both parties use the same names to describe the colors offered. The Court is persuaded that the colors used by plaintiff are less brilliant than the defendants use, but that this feature is not sufficient alone to distinguish the respective lines. However, it is in fact an element which has been a characteristic worthy of note.

Price is claimed to be another factor. It was established that while the price ranges of the parties overlapped, by and large the plaintiff's garments were priced above defendants'. The fact that the price ranges overlapped did not establish that the respective lines sold in the same market. Neither does

the fact that the defendants' garments are considered less expensive establish that they are in a different market.

From all of the evidence it seems possible for a manufacturer in the women's ready-to-wear garment industry to carve out an area of distinction to which a trademark might attach in such a way as to acquire a secondary meaning. From the same evidence it also appears that if the plaintiff has succeeded in such an endeavor, the defendants have not encroached upon such area because the refinements which make a secondary meaning possible to establish, distinguish the goods of the parties.

When all of the evidence is considered, including the trade channels of sale, it appears to the Court and the Court finds that there is a difference of goods manufactured and sold by the respective parties which is readily recognizable by the customers and prospective customers of the respective parties and that this difference minimizes the likelihood of confusion to the point that it is most unlikely.

There are other elements of the dispute which have not been mentioned. A witness for plaintiff testified that the term "Original" was meaningless nowadays. This was undoubtedly offered to establish that such a word added little or nothing to the mark and it should be practically ignored as of no significance. This bolstered plaintiff's argument that "Sachs" was the dominant feature of the mark. In passing it should be noted that this is a surname such as would not alone be accepted for registration. The same witness testified that he had added the word "Original" to his trademark when in business as a manufacturer as salesmanship. This is the purpose of trademarks and the word serves its purpose, this purpose, in plaintiff's mark.

Defendants attached great significance to the words "of California" as indicating place of origin and as a customer attraction. The evidence indicates that goods originating in California have a special acceptance among retail and wholesale buyers of women's ready-to-wear apparel, from whatever the cause may be.

Plaintiff argues that there is but a single issue, namely, trademark infringement, and that unfair competition is embraced within this issue. The argument had proceeded upon this hypothesis except in one particular. Plaintiff argues that confusion is likely because plaintiff has advertised as shown upon Exhibit 33 "America's famous fashion family" and that "Sachs of California" is likely to be taken as a member of the family. The objection in this connection must be that "Sachs of California" is competing unfairly by attempting to capitalize upon the advertising of plaintiff. The Court finds that there is no likelihood of confusion between the parties and that "Sachs of California" is not likely to be taken as a member of plaintiff's family. "Sachs of California" has done nothing to attach itself to plaintiff's advertising and is not guilty of unfair competition in this respect.

There was no evidence of actual confusion of goods. While this is not a prerequisite for relief, it has been characterized as constituting the strongest evidence. As can readily be perceived from what has already been said, women who purchase ready-to-wear garments possess a certain sophistication concerning the language of the market place and they are discerning and discriminating. The number and variety of trademarks used by manufacturers are legion and the distinctions are subtle and yet they are understood and appreciated by wholesale and retail customers.

From the standpoint of sound when orally pronounced the trademarks are not confusingly alike. They are not confusingly similar in appearance. There is no likelihood of confusion between plaintiff's marks "Paul Sachs Original", "Don Sachs Original", and the registered trademark "Don Sachs" with defend-

ants' trademark and trade name "Sachs of California". If plaintiff's marks have an established secondary meaning, defendants' trademark and trade name does not encroach upon it. The likelihood of confusion is so remote that defendants have not been guilty of unfair competition.

■ A Court's dissection of a trademark may be comparable to diagraming an English sentence. It is an helpful analysis of the whole. Although in this process one part of a mark may be laid beside the comparable element of another, the two marks are to be considered in their entireties. Dissection is explanatory of a conclusion derived from the whole mark. It is not to pay lip service or homage to a hollow rule that a Court gives consideration to the mark as a whole, nor is defendants' position that trademarks must be viewed in their entirety completely untenable except to the extent that the established law is untenable.

No critical questions of law are presented in the case at bar. Its decision rests upon determination of questions of fact and the application of well established and widely recognized principles of law which need no exposition in this Memorandum of Decision.

■ The only conclusion which the evidence in this case enables the Court to reach is that the merchandise of the parties is not identical and the trademarks are clearly distinguishable by their customers and that there is no likelihood of confusion from the use of the trade name and trademark "Sachs of California" by the defendants.

Defendants are entitled to a judgment of dismissal and their costs of suit. Judgment should be entered accordingly.

This Memorandum of Decision shall substitute for Findings of Fact and Conclusions of Law. (F.R.Civ.P. rule 52)