PAUL SACHS ORIGINALS CO.,
Appellant,

v.

John SACHS and Leo Hirsch, Doing Business as Sachs of California, a Partnership, Appellees.

No. 18774.

United States Court of Appeals
Ninth Circuit.

Nov. 21, 1963.

Flam & Flam, Los Angeles, Cal., and Ralph W. Kalish, St. Louis, Mo., for appellant.

Fendler, Gershon & Warner, and Harold A. Fendler, and Douglas Fendler, Beverly Hills, Cal., for appellee.

Before HAMLIN, BROWNING and DUNIWAY, Circuit Judges.

HAMLIN, Circuit Judge.

This is an appeal from an order of the United States District Court for the Southern District of California, sitting without a jury, dismissing appellant's suit for injunction, accounting, and damages for trademark infringement and unfair competition. The district court's findings of fact and conclusions of law are published in a memorandum of decision, 217 F.Supp. 407 (S.D.Cal.1963). Jurisdiction of this court is based on section 39 of the Trademark Act of 1946, 60 Stat. 400, 15 U.S.C. § 1121 (1958), and on 28 U.S.C. § 1291 (1958).

Since 1942, appellant and its predecessor, Paul Sachs Originals, Inc., both Missouri corporations having headquarters in St. Louis, have used the trade name "Paul Sachs Original" in connection with their manufacture and sale of ladies' and "misses'" dresses. This is applied to garments by means of labels and hang tags. A trademark, "Paul Sachs Original," was registered with the United States Patent Office on October 12, 1948, which registration became incontestable on October 22, 1953, by reason of affidavits filed under section 8 of the Trademark Act of 1946, 60 Stat. 431, 15 U.S.C. § 1058 (1958), and section 15 of that act, 60 Stat. 433, as amended, 76 Stat. 771 (1962), 15 U.S.C. § 1065 (Supp. IV, 1962). Upon filing the affidavits, appellant disclaimed the word "Original" in these words: "no exclusive claim being made to the word 'Original' apart from the mark as shown and described." In 1959, appellant began manufacture and sale of another line of "petite" dresses under the trade name "Don Sachs Original." On December 6, 1960, appellant registered the trademark "Don Sachs" with the Patent Office, application for the registration having been published in the Official Gazette of that office on September 20, 1960. At no time in the past twenty-odd years has appellant ever used any other trade names on its garments than "Paul Sachs Original" and "Don Sachs Original." Appellant's annual sales of the aforesaid dresses have exceeded $1,500,000, and a total of $400,000 has been expended in advertising in trade magazines and such fashion magazines of national circulation as *Vogue*, *Charm*, and *Mademoiselle*, although advertising in these latter publications was discontinued in the early 1950's and not resumed until 1960. Such advertising invariably used the terms "Paul Sachs Original" and "Don Sachs Original" in referring to appellant's wares. Sales have been on a nationwide basis and in the past ten years have been made to over 2500 accounts. The wholesale price range is from $10.75 to $39.75. Sales of each line in California average around $100,000 annually to some three hundred accounts.

Since 1951, John Sachs has been in the business of selling, designing, and manufacturing women's dresses—first as a salesman for a dress manufacturer known as "Sun Maid of California," then as

sales manager and designer of "young missy" dresses for another known as "Lou-Ette Originals," and finally as a partner in a similar firm known as "Steffi of California." During this time he built up a clientele which included approximately a dozen buying services in Los Angeles, each of which arranges purchases of dresses for from fifty to three hundred stores throughout the country. In September of 1960, John Sachs as general partner and Leo Hirsch as limited partner, appellees herein, formed a partnership known as "Sachs of California." John Sachs is the active manager of the business while his wife is style coordinator; Leo Hirsch takes no active part in the business. Each of the company's dresses bears a label and a hang tag with the partnership name, "Sachs of California," thereon. Appellees' dresses have been sold nationwide, but seventy-five per cent of their business is conducted in the state of California where they have some two hundred accounts including some of the major department stores and specialty shops. Much of this business is transacted through the same buying services which John Sachs utilized in his earlier career. Appellees' dresses are priced to sell at wholesale from $6.75 to $14.75 and are of the style known as "young missy." No search of patent office records was made by appellees when they began their business. The first knowledge which appellees had of appellant's existence was a notice in writing from appellant dated June 7, 1961, objecting to appellees' use of the name "Sachs of California." Having built up an extensive business under that name, appellees refused to cease using it, and this litigation ensued.

■■ There is a great profusion of cases on trademark infringement and unfair competition. The results in these cases in many instances may appear to be contradictory. On examination, however; it becomes clear that one test must be satisfied before either action will lie:

There must be likelihood of confusion. Plough, Inc. v. Kreis Labs., 314 F.2d 635 (9th Cir. 1963). In determining likelihood of confusion, examination of prior cases is not very helpful except insofar as they indicate factors to be considered. A fairly good summation of these factors is found in Chester Barrie, Ltd., v. Chester Laurie, Ltd., 189 F.Supp. 98, 101 (S.D.N.Y.1960):

> "Material to a determination of the 'likelihood of confusion' are inter alia: the area of concurrent sale; the extent to which the goods are related; the extent to which the mark and the alleged infringing name are similar; the 'strength' or novelty of the plaintiff's mark; evidence of bad faith or intention of the defendant in selecting and using the alleged infringing name; and, evidence of actual confusion."

Obviously, whether any or all of these factors weigh in favor of the relief sought is a matter to be determined in the first instance by the trial court on the facts of the particular case, and each case must stand on its own facts.[1]

■ The district court made detailed findings against appellant and it is the duty of this court to examine these findings to ascertain whether they are supported by the evidence. In this connection, it hardly needs to be reiterated that we will not disturb the trial court's findings unless they are clearly erroneous.

■ The trial court found, first of all, that the markets in which the parties sold their goods did not overlap to any significant extent. It found that they sold to one or two of the same stores from time to time, and that both exhibited their goods at the Pacific Coast Travelers Association Market Week at the Biltmore Hotel in Los Angeles, but that otherwise there was no overlap, despite the fact that both sell their dresses nationally. Moreover, the court found that the dresses concerned were aimed at different mar-

1. Brooks Bros. v. Brooks Clothing of Cal., Ltd., 60 F.Supp. 442, 448 (S.D.Cal. 1945), aff'd mem., 158 F.2d 798 (9th Cir.), cert. denied, 331 U.S. 824, 67 S.Ct. 1315, 91 L.Ed. 1840 (1947).

kets, and that a dress made by one of the parties would not fit a woman who could wear a dress made by the other. The reason given for this is that, even though the dresses might be of the same numerical size, a "young missy" dress will have a different bust and hip measurement from either a "misses" or a "petite" dress. The evidence supporting this latter finding is uncontradicted, all of appellant's evidence on this issue being directed toward lack of visible differences between the dresses wholly apart from fit. The evidence is ample to support the finding that the goods of the parties do not sell in the same markets. Appellant contends that competition is not necessary in an action for trademark infringement or unfair competition and cites many cases in support of this proposition. However, nowhere does appellant show us a case that says that competition, or lack of it, is an irrelevant consideration in determining likelihood of confusion.

■ The trial judge found that the marks themselves were dissimilar and hence unlikely to cause confusion. Appellant contends that the name "Sachs" had become dominant in appellant's trademark and was also the dominant portion of appellees' trademark, and therefore that the marks were not only similar but the same. The trial court found to the contrary, stressing the fact that the surname "Sachs" had never been given any emphasis or predominance by appellant over its accompanying Christian names "Paul" and "Don." [2] It also

found that both names have always been used in the same style, size, color, lettering, and appearance as the name "Sachs" and that substantially every use and advertisement has utilized all three words— "Paul Sachs Original" or "Don Sachs Original." It further said, "Both names have invariably been displayed and shown together and with the word 'Original' following so that the two names and the word 'Original' have constituted a single integrated trademark." [3] On the other hand, the district court found that appellees had never used the single word "Sachs" but had at all times used the three words "Sachs of California" on all labels, hang tags, correspondence, and otherwise.[4]

The district judge made no finding as to the "strength" or novelty of the appellant's mark. This, however, was not necessary, for there was no evidence showing such strength or novelty.

The trial court found that there was no evidence of bad faith or knowledge of the appellees in selecting and using the alleged infringing name. This is essentially uncontradicted in the record. Not only did appellees testify they had never heard of appellant, but other witnesses who were knowledgeable in the trade testified that *they* had never heard of appellant prior to the institution of this suit. Appellant contends that this simply cannot be so. Aside from the fact that appellant's officers apparently have an exaggerated idea of their company's pres-

2. To support a claim of unfair competition, more than dominance of one part of the name must be shown. There must also be proof of the establishment of a secondary meaning in the public mind. The court made no finding on this issue. However, no evidence was introduced to establish such a secondary meaning.

3. 217 F.Supp. at 411.

4. Appellant cites the case of Cole of California, Inc. v. Richard J. Cole, Inc., 138 U.S.P.Q. 522 (Pat. Off. Trademark Tr. & App. Bd. 1963), in which the board refused to register "Coleknit by Richard Cole" because of its similarity to the prior used mark "Cole of California." Appellant contends that the *Cole* case is just the reverse of the instant case and the rules of law must work the same way in both directions. While we do not concede the legal proposition of appellant, the two cases are distinguishable. The opposer in *Cole* had registered the mark "Cole of California," but had also used the name "Cole" by itself in many cases in its advertising, so that the name "Cole" alone had long been identified with the opposer's goods. In the instant case, the court did not find that the name "Sachs" had become identified with appellant's goods, and there is no evidence to show that it had become so identified.

tige, the determination of the credibility of witnesses is for the trial court.

■■ The district court also found no evidence of actual confusion between the marks. Although appellant is correct in stating that evidence of actual confusion is unnecessary, lack of it is a relevant factor in determining likelihood of confusion when there is as much doubt about such likelihood as there is in the instant case.[5] The district court found that the difference between the goods sold by the parties was readily distinguishable by a customer; that this difference minimized the likelihood of confusion to the point that it is most unlikely; that the merchandise was not identical; that the trademarks were clearly distinguishable; that there was no sound confusion between them; and that they were not confusingly similar in appearance.[6] Finally, the court found that there was no likelihood of confusion between them.

On examination of the entire record, we hold that the findings of fact of the trial court are amply supported by the evidence. The district court applied the proper legal tests to the evidence, and we cannot say that the conclusions reached were clearly erroneous.

Judgment affirmed.

5. Appellants have cited many times the case of Brooks Bros. v. Brooks Clothing of Cal., Ltd., 60 F.Supp. 442 (S.D.Cal. 1945), aff'd mem., 158 F.2d 798 (9th Cir.), cert. denied, 331 U.S. 824, 67 S.Ct. 1315, 91 L.Ed. 1840 (1947), and have maintained that that case is almost identical to this one. Judge Yankwich's opinion in Brooks is indeed an excellent exposition of the law in trademark infringement and unfair competition cases and was adopted by this court on appeal. However, there are many features which distinguish that case from this one. There was not the evidence of difference of markets that is present in this case; instead, there was evidence of actual competition. There was considerable evidence that the name "Brooks" alone had acquired a definite secondary meaning in the public mind as being connected with articles of plaintiff's manufacture. There was also evidence that defendant had used the name "Brooks" alone without putting on his labels or in his advertisements the entire company name, whereas appellees in this case have always used the full partnership name, "Sachs of California." Moreover, there was evidence in Brooks of actual intent to deceive on the part of defendant and of actual confusion between the parties in the public mind, neither of which is present here.

6. It is further to be noted that appellee is operating a business under his own name—a name which has become well known in the local markets in which he deals. While it is true that a person cannot use even his own name in such a way as to deceive the public, courts of equity are extremely reluctant to deprive a person of the use of his own name in trade, and hence will scrutinize with great care the evidence of likelihood of confusion. This points to another difference between this case and Brooks, supra note 5. In that case no one by the name of "Brooks" had ever been connected at any time with the defendant.