**In re NATIONAL DATA CORPORATION.**

**Appeal No. 84–1137.**

United States Court of Appeals, Federal Circuit.

Jan. 30, 1985.

Stephen A. Bent, Schwartz, Jeffery, Schwabb, Mack, Blumenthal & Koch, P.C., Alexandria, Va., argued for appellant. With him on the brief was Peter G. Mack, Alexandria, Va.

Thomas E. Lynch, Associate Sol., Arlington, Va., argued for appellee. With him on the brief were Joseph F. Nakamura, Sol.

and Jere W. Sears, Deputy Sol., Washington, D.C.

Before DAVIS, SMITH and NIES, Circuit Judges.

NIES, Circuit Judge.

The decision of the Trademark Trial and Appeal Board, reported at 222 USPQ 515 (1984), which affirmed a refusal to register the service mark THE CASH MANAGEMENT EXCHANGE as shown in Serial No. 294,193 in view of the prior Registration No. 1,118,929 for the service mark CASH MANAGEMENT ACCOUNT, both used in connection with financial services, is affirmed.

## I.

### Background

National Data Corporation filed an application to register THE CASH MANAGEMENT EXCHANGE on the Principal Register as a service mark for "computerized cash management services." Use of the mark is alleged since on or about November 18, 1980. The examiner refused registration under § 2(d) of the Trademark Act of 1946, as amended, 15 U.S.C. § 1052(d) (1976), on the ground that the mark sought to be registered so resembled the following mark as to be likely to cause confusion, or to cause mistake or to deceive:

CASH MANAGEMENT ACCOUNT, Reg. No. 1,118,929, issued May 22, 1979, for "financial services involving the use of plastic credit cards by the card holders for loans to card holders from their brokerage equity account."

No disclaimer of rights in CASH MANAGEMENT appears in the registration for CASH MANAGEMENT ACCOUNT.

A second basis for rejection was given under § 2(e), 15 U.S.C. § 1052(e) (1976), on the ground that the words CASH MANAGEMENT, as well as the word EXCHANGE, were descriptive of financial services and, thus, the mark as a whole was merely descriptive.[1]

National responded to the Office Action by voluntarily entering a disclaimer of exclusive rights in the words "cash management." National also submitted evidence purporting to show that "cash management" is an expression commonly used in the financial community to denote the concept of handling cash resources to maximize yield. It maintained, however, that its mark in its entirety is not descriptive because the combination of EXCHANGE with CASH MANAGEMENT is somewhat incongruous. Finally, it argued that its mark is distinguishable over the cited reference because the only similarity is in the descriptive or generic words "cash management." The examiner was unpersuaded to withdraw either ground of rejection and National appealed to the board.

The board reversed the rejection that the mark is merely descriptive, but upheld the alternate basis for refusal of registration, stating:

> As for the Section 2(d) ground, we agree with the Examining Attorney that the marks THE CASH MANAGEMENT EXCHANGE and CASH MANAGEMENT ACCOUNT are confusingly similar in that the dominant feature of both marks, i.e., CASH MANAGEMENT, is identical, causing the marks to have very similar overall commercial impressions.

The board further rejected National's argument that likelihood of confusion could not be predicated on the expression "cash management," which National characterized as a merely descriptive expression in the public domain. The Board found that the

---

**1.** The examiner also requested a more particularized description of applicant's services, which were subsequently amended to:

Computerized cash management services to businesses and financial institutions—namely, facilitating electronic fund transfers and providing electronic reporting services for the collection, concentration, disbursement,

short-term borrowing and short-term investing of funds; bank deposit reporting services; bank balance reporting services; and providing for periodic reporting of financial information by branch outlets, collecting such information, compiling the same and transmitting reports thereon to management.

evidence did not even come close to supporting an inference that "cash management" is generic for the particular services in the cited registration and that the absence of a disclaimer in the registration "must be presumed" to support the conclusion that it is not. Further, National's efforts to show otherwise were deemed an attack on the registration that could not be considered collaterally, that is, outside of a cancellation proceeding.

## II.

This appeal raises a question with respect to the significance, in determining likelihood of confusion, that may be attributed to highly descriptive or generic terms which appear in composite marks. National argues that the board relied solely on such a term, i.e., CASH MANAGEMENT, in finding likelihood of confusion between the subject marks and, thus, erred as a matter of law. National points to a number of opinions of the United States Court of Customs and Patent Appeals in which marks were held not to be conflicting because the similarity between them rested solely in a descriptive or generic term which formed part of each mark.[2] National further faults the board for presuming that the expression CASH MANAGEMENT in the cited registration "possesses trademark significance" and for precluding National from challenging the registrant's rights in these words.

While we do not agree with the board's analysis in all respects, we must nevertheless affirm the board's decision. National has failed to persuade us that the board erred not only in its approach to the ultimate issue, but also in the result.

## III.

The basic principle in determining confusion between marks is that marks must be compared in their entireties and must be considered in connection with the particular goods or services for which they are used. *Glenwood Laboratories v. American Home Products Corp.*, 455 F.2d 1384, 1385, 173 USPQ 19, 20 (CCPA 1972); 2 J. McCarthy, *Trademarks and Unfair Competition* § 23:15A (2nd ed. 1984). It follows from that principle that likelihood of confusion cannot be predicated on dissection of a mark, that is, on only part of a mark.[3] On the other hand, in articulating reasons for reaching a conclusion on the issue of confusion, there is nothing improper in stating that, for rational reasons, more or less weight has been given to a particular feature of a mark, provided the ultimate conclusion rests on consideration of the marks in their entireties.[4] Indeed, this type of analysis appears to be unavoidable.

That a particular feature is descriptive or generic with respect to the involved goods or services is one commonly accepted rationale for giving less weight to a portion of a mark, for reasons which will be discussed *infra*. Without question, the descriptive or generic character of an expres-

2. *Seven-Up Co. v. Tropicana Products*, 356 F.2d 567, 568, 148 USPQ 604, 606 (CCPA 1966); *Sears, Roebuck & Co. v. Hofman*, 258 F.2d 953, 954, 119 USPO 137, 138 (CCPA 1958); *Lauritzen & Co. v. Borden Co.*, 239 F.2d 405, 407, 112 USPQ 60, 61–62 (CCPA 1956); *Goldring, Inc. v. Town-Moor, Inc.*, 228 F.2d 254, 255, 108 USPQ 234, 235 (CCPA 1955); *In re Blue Lake Producers Coop.*, 194 F.2d 126, 128, 92 USPQ 334, 336 (CCPA 1952); *Nestle's Milk Products v. Baker Importing Co.*, 182 F.2d 193, 196, 86 USPQ 80, 82–83 (CCPA 1950); *Franco-Italian Packing Corp. v. Van Camp Sea Food Co.*, 142 F.2d 274, 276, 61 USPQ 369, 370–71 (CCPA 1944). The decisions of the United States Court of Customs and Patent Appeals have been adopted as precedent by this court. *South Corp. v. United States*, 690 F.2d 1368, 215 USPQ 657 (Fed.Cir.1982).

3. *Massey Junior College, Inc. v. Fashion Institute of Technology*, 492 F.2d 1399, 1402, 181 USPQ 272, 273–74 (CCPA 1974); *see Franklin Mint Corp. v. Master Mfg. Co.*, 667 F.2d 1005, 1007, 212 USPQ 233, 234 (CCPA 1981) ("It is axiomatic that a mark should not be dissected and considered piecemeal; rather, it must be considered as a whole in determining likelihood of confusion.").

4. *Sleepmaster Products Co. v. American Auto-Felt Corp.*, 241 F.2d 738, 741, 113 USPQ 63, 65 (CCPA 1957). *Accord, Paul Sachs Originals Co. v. Sachs*, 217 F.Supp. 407, 417, 137 USPQ 240, 247 (S.D.Cal.), *aff'd*, 325 F.2d 212, 139 USPQ 414 (9th Cir.1963).

sion which forms part of both marks under consideration is pertinent to the issue of likelihood of confusion. Thus, National was entitled to attempt to prove that the relevant public would understand that CASH MANAGEMENT in both marks was of this nature.

To this end, National attaches significance to the disclaimer of CASH MANAGEMENT in its application,[5] and, in effect, argues that in the inquiry here EXCHANGE and ACCOUNT should be treated as the marks of the parties or at least as the "dominant" portion of each mark. The board, on the other hand, noted the absence of a disclaimer in the cited registration and, from that fact, presumed that the words CASH MANAGEMENT were distinctive in the registered mark. We do not agree with either of these theories.

■ The technicality of a disclaimer in National's application to register its mark has no legal effect on the issue of likelihood of confusion.[6] The public is unaware of what words have been disclaimed during prosecution of the trademark application at the PTO.[7] It appears that National voluntarily disclaimed these words, as a tactical strategy, believing it would assist in avoiding a holding of likelihood of confusion with the cited mark. However, such action cannot affect the scope of protection to which *another's* mark is entitled.

■ National did not, however, rely solely on its disclaimer of rights in CASH MANAGEMENT to establish descriptiveness of the term, but, in addition, supported its position with articles from finan-cial publications showing descriptive use thereof in the financial community. The board acknowledged that National's evidence was credible with respect to some financial services, but refused to give it any weight in resolving the ultimate issue because of the *absence* of a disclaimer in the registered mark. The absence of a disclaimer does not, however, mean that a word or phrase in a registration is, or has become, distinctive in the registered mark, so that that part of the mark must be treated the same as an arbitrary feature. The power of the PTO to accept or require disclaimers is discretionary under the statute, *supra* note 5, and its practice over the years has been far from consistent. Thus, it is inappropriate to give the presence or absence of a disclaimer any legal significance. *See* Lefkowitz, *supra* note 7.

In any event, the question is whether, at the time the issue of likelihood of confusion is being resolved, the public considers certain words to be arbitrary or descriptive, even though the words may have been arbitrary in the past so that no disclaimer would have been appropriate when the mark was registered.

■ Thus, National was entitled to show, if it could, that CASH MANAGEMENT in the registered mark was descriptive, and its proof should not have been disregarded on the ground that the registration could not be attacked in this proceeding. The registration affords *prima facie* rights in the mark *as a whole*, not in any component. Thus, a showing of descriptiveness or genericness of *part* of a

---

5.  15 U.S.C. § 1056 provides:

    (a) The Commissioner may require the applicant to disclaim an unregisterable component of a mark otherwise registrable. An applicant may voluntarily disclaim a component of a mark sought to be registered.

    (b) No disclaimer, including those made under paragraph (d) of section 7 of this Act, shall prejudice or affect the applicant's or registrant's rights then existing or thereafter arising in the disclaimed matter, or his right of registration on another application if the disclaimed matter be or shall have become distinctive of his goods or services.

6.  *Specialty Brands, Inc. v. Coffee Bean Distributors, Inc.,* 748 F.2d 669, 672, 223 USPQ 1281, 1282 (Fed.Cir.1984); *Giant Food, Inc. v. Nation's Foodservice, Inc.,* 710 F.2d 1565, 1570, 218 USPQ 390, 395 (Fed.Cir.1983).

7.  Lefkowitz, *Disclaimers, May They Rest in Peace,* 71 Trademark Rptr. 215, 240 (1981); Vandenburgh, *Trademark Law and Procedure,* § 5.34, at 181 (2nd ed. 1968).

mark does not constitute an attack on the registration.[8]

## IV.

Assuming CASH MANAGEMENT is generic or at least highly descriptive in both marks, as urged by National, does not, however, lead to a reversal in this case.

According to National, it is legal error to predicate a holding of likelihood of confusion on common portions of marks which are descriptive or generic. However, contrary to National's view, the statements which could be extracted from the cited precedent (*supra* note 2), with respect to the weight to be given a descriptive term in resolving the issue of likelihood of confusion, are set forth not as a matter of law, but of logic.

The precedential decisions which have stated that a descriptive component of a mark may be given little weight in reaching a conclusion on likelihood of confusion reflect the reality of the market place. Where consumers are faced with various usages of descriptive words, our experience tells us that we and other consumers distinguish between these usages. Some usages will be recognized as ordinary descriptive speech. Where a descriptive term forms part of two or more marks for related products, as in some of the cited cases, the decisions recognize that the purchasing public has become conditioned to this frequent marketing situation and will not be diverted from selecting what is wanted unless the overall combinations have other commonality. In a sense, the public can be said to rely more on the non-descriptive portion of each mark. On the other hand, this does not mean that the public looks only at the differences, or that the descriptive words play no role in creating confusion.

To illustrate, assume the following pairs of hypothetical marks for identical financial services: ACCOUNT and EXCHANGE; CASH ACCOUNT and CASH EXCHANGE or MANAGEMENT ACCOUNT and MAN-

AGEMENT EXCHANGE; CASH MANAGEMENT ACCOUNT and CASH MANAGEMENT EXCHANGE; and, finally, CASH MANAGEMENT ACCOUNT BANK and CASH MANAGEMENT EXCHANGE BANK. That these pairs are of progressively greater similarity is readily apparent, with the result that likelihood of confusion of the public becomes a closer question at each step of the progression, until it becomes virtually undeniable even though only a "generic" word, "BANK", has been added at the final stage. The differing portions of each pair of marks, ACCOUNT and EXCHANGE, are as similar or dissimilar in the last pair as in the first, but the marks in their entireties are not. The addition of a string of descriptive and even generic words has altered the mental impression made by the marks until it can only be concluded that the dissimilar part has been submerged. Thus, one cannot, as urged by appellant, focus primarily on the non-common features, here, ACCOUNT and EXCHANGE, to determine likelihood of confusion. The marks must be considered as the public views them, that is, in their entireties.

## V.

■ CASH MANAGEMENT ACCOUNT and THE CASH MANAGEMENT EXCHANGE are, in large part, identical in sound and appearance and have a general similarity in cadence. In addition, the words ACCOUNT and EXCHANGE, while not synonyms, both have the connotation of monetary transactions, so that the marks carry the same overall connotation. The sole feature in National's mark which is different from the registered mark, in our view, is not sufficiently different to distinguish the marks to the public. Thus, we agree with the board's conclusion that National's mark is likely to cause confusion with the registered mark and *affirm* the refusal of registration.

AFFIRMED.

---

**8.** No argument was made that the entire mark CASH MANAGEMENT ACCOUNT was generic. Such an attack could, of course, not be made in this proceeding but would require the filing of a petition to cancel the registration.