4/30/02
Oral Hearing:
March 5, 2002
GDH/gdh
Paper No. 16

**THIS DISPOSITION
IS NOT CITABLE AS PRECEDENT
OF THE T.T.A.B.**

**UNITED STATES PATENT AND TRADEMARK OFFICE**
_____

**Trademark Trial and Appeal Board**
_____

In re TSI Brands, Inc.
_____

Serial No. 75/615,925
_____

Edward M. Prince of Alston & Bird LLP for TSI Brands, Inc.

William H. Dawe, III, Trademark Examining Attorney, Law Office 108 (David E. Shallant, Managing Attorney).
_____


Before Simms, Hohein and Bucher, Administrative Trademark Judges.

Opinion by Hohein, Administrative Trademark Judge:


TSI Brands, Inc., by assignment, is the owner of an application originally filed by Tropical Sportswear Int'l Corporation to register the mark "AK AMERICAN KHAKIS" and



design, as reproduced below,

for "sportswear[,] namely men's and women's pants, jeans, shorts and shirts."[1]

Registration has been finally refused under Section 2(d) of the Trademark Act, 15 U.S.C. §1052(d), on the ground that applicant's mark, when used in connection with its goods, so resembles each of the following marks, which are owned by the same registrant, as to be likely to cause confusion, mistake or deception: (i) the mark "AK" and design, as illustrated below,



which is registered for "athletic clothing; namely, sweaters, jerseys, shirts and tops, undershirts, pants, hosiery, jackets, ski jackets, ski pants, [and] ski suits"[2] and for "athletic clothing, namely, sweaters, jerseys, shirts and tops, undershirts, pants, shorts, hosiery, jackets, ski jackets, ski

---

[1] Ser. No. 75/615,925, filed January 5, 1999, which alleges a bona fide intention to use  the words "AMERICAN KHAKIS" are disclaimed.

[2] Reg. No. 1,788,222, is which is based upon Canadian Reg. No. 255,6 31; combined affidavit §§8 and 15.

pants and ski suits.";[3] and (ii) the mark "AK" and design, as

shown below,

which is registered for "athletic clothing, namely, sweaters,

jerseys, shirts and tops, undershirts, pants, shorts, hosiery,

jackets, ski jackets, ski pants and ski suits."[4]

Applicant has appealed. Briefs have been filed and an

oral hearing was held. We reverse the refusal to register.

Our determination under Section 2(d) is based on an

analysis of all of the facts in evidence which are relevant to

the factors bearing on the issue of whether there is a

likelihood of confusion. In re E. I. du Pont de Nemours & Co.,

476 F.2d 1357, 177 USPQ 563, 568 (CCPA 1973). However, as

indicated in Federated Foods, Inc. v. Fort Howard Paper Co., 544

F.2d 1098, 192 USPQ 24, 29 (CCPA 1976), in any likelihood of

confusion analysis, two key considerations are the similarity of

the goods and the similarity of the marks.[5]

Turning first to consideration of the respective

goods, applicant argues that its goods are items of sportswear

---

[3] Reg. No. 2,259,675, issued on July 6, 1999, which sets forth a date of first use anywhere of 1975 and a date of first use in commerce of 1993.

[4] Reg. No. 2,263,005, issued on July 20, 1999, which sets forth a date of first use anywhere and in commerce of December 1997.

[5] The court, in particular, pointed out that: "The fundamental inquiry mandated by §2(d) goes to the cumulative effect of differences in the essential characteristics of the goods and differences in the marks."

while those of the registrant constitute athletic clothing. Such goods differ, applicant asserts, in that "[s]portswear is informal, casual wear; not dressy wear," while "[a]thletic clothing must necessarily be clothing for athletics." According to applicant, "[i]t is a simple fact that generally stores selling sportswear and other types of dressy apparel, both for men and for women, do not sell athletic uniforms or other types of athletic clothing, and for certain do not sell such goods in the same store sections." Therefore, applicant maintains, "[i]t is unlikely that the goods are related in such a manner, or marketed under such conditions, that the goods would be encountered by the same purchasers under circumstances that could give rise to the mistaken belief that the goods come from a common source.

We agree with the Examining Attorney, however, that the respective goods are so closely related that their marketing under the same or substantially similar marks would be likely to cause confusion as to the source or sponsorship thereof. In this regard, it is well settled that goods need not be identical or even competitive in nature in order to support a finding of likelihood of confusion. It is sufficient, instead, that the goods are related in some manner and/or that the circumstances surrounding their marketing are such that they would be likely to be encountered by the same persons under situations that

4

would give rise, because of the marks employed in connection therewith, to the mistaken belief that they originate from or are in some way associated with the same entity or provider. See, e.g., Monsanto Co. v. Enviro-Chem Corp., 199 USPQ 590, 595-96 (TTAB 1978) and In re International Telephone & Telegraph Corp., 197 USPQ 910, 911 (TTAB 1978). It is also well established that the issue of likelihood of confusion must be determined on the basis of the goods as they are set forth in the involved application and cited registration(s). See, e.g., CBS Inc. v. Morrow, 708 F.2d 1579, 218 USPQ 198, 199 (Fed. Cir. 1983); Squirtco v. Tomy Corp., 697 F.2d 1038, 216 USPQ 937, 940 (Fed. Cir. 1983); and Paula Payne Products Co. v. Johnson Publishing Co., Inc., 473 F.2d 901, 177 USPQ 76, 77 (CCPA 1973). Thus, where the goods in the application at issue and in the cited registration(s) are broadly described as to their nature and type, it is presumed in each instance that in scope the application and registration(s) encompass not only all goods of the nature and type described therein, but that the identified goods move in all channels of trade which would be normal for such goods and that they would be purchased by all potential buyers thereof. See, e.g., In re Elbaum, 211 USPQ 639, 640 (TTAB 1981).

In support of his position, the Examining Attorney has made of record copies of nearly 30 use-based third-party

5

registrations of marks which, in each instance, are registered for various items of sportswear, on the one hand, and certain articles of athletic clothing, on the other. Applicant, although admitting in its initial brief that the record contains "numerous third-party registrations showing that [casual] clothing and athletic uniforms are manufactured by the same entity," argues that such registrations "do not prove that athletic uniforms are sold in the same sections of stores as sportswear." While such evidence does not establish that the different marks shown therein are in use or that the public is familiar with them, it nonetheless has some probative value to the extent of serving to suggest that the goods listed therein are of a kind which may emanate from a single source and that, contrary to applicant's contention, those goods may also be sold through the same retail outlets, including department stores, mass merchandisers, and specialty clothiers and sports equipment retailers. See, e.g., In re Albert Trostel & Sons Co., 29 USPQ2d 1783, 1785-86 (TTAB 1993) and In re Mucky Duck Mustard Co. Inc., 6 USPQ2d 1467, 1470 (TTAB 1988) at n. 6.

Moreover, even if, despite the absence of any specific limitations as to the channels of trade therefor, the goods at issue herein were actually to be sold, as asserted by applicant, through different avenues of distribution, it is still the case that the ordinary consumers for its sportswear and those for

6

registrant's athletic clothing are the same and that they would be expected to cross-shop the various retail outlets and/or sections thereof which are normal for the respective goods. It is also common knowledge that athletic apparel, such as jerseys, sweaters, shorts, sweatshirts and sweatpants, is often purchased and worn as casual clothing or sportswear. Therefore, even if sold in different sections of the same retail establishments, the evidence of record, coupled with common experience, is sufficient to demonstrate that applicant's and registrant's goods are so closely related in a commercial sense that, if sold under the same or similar marks, confusion would be likely. See, e.g., In re Kangaroos U.S.A., 223 USPQ 1025, 1026 (TTAB 1984) [athletic shoes and men's shirts].

Turning next to consideration of the respective marks, the Examining Attorney argues, among other things, that while a disclaimed portion of a mark cannot be ignored inasmuch as marks must be considered in their entireties, one feature of a mark may be more significant in creating a commercial impression.[6]

---

[6] We note, in this regard, that our principal reviewing court has indicated that, in articulating reasons for reaching a conclusion on the issue of likelihood of confusion, "there is nothing improper in stating that, for rational reasons, more or less weight has been given to a particular feature of a mark, provided [that] the ultimate conclusion rests on consideration of the marks in their entireties." In re National Data Corp., 753 F.2d 1056, 224 USPQ 749, 751 (Fed. Cir. 1985). For instance, according to the court, "that a particular feature is descriptive or generic with respect to the involved goods or services is one commonly accepted rationale for giving less weight to a portion of a mark ...." 224 USPQ at 751.

Given applicant's disclaimer of the words "AMERICAN KHAKIS" in its mark,[7] the Examining Attorney asserts that "the letters 'AK' are clearly the dominant portion of the applicant's mark."  In view thereof, the Examining Attorney contends that (footnotes omitted):

> Aside from the less significant portion of the applicant's mark, namely, the disclaimed descriptive wording "AMERICAN KHAKIS," the marks of the respective parties are virtually identical in sound, meaning and appearance.  As a result of these similarities, the marks are very similar in overall commercial impression. Specifically, the dominant portion of the applicant's mark consists of the exact two letters, "AK," as the registrant's marks, namely, "AK."  Although the registrant's marks are stylized differently from the applicant's large block letters, this difference does not alter the manner in which these letters are viewed or pronounced.  ....  In fact, when a mark consists of a word portion and a design portion, the word portion is more likely to be impressed upon a purchaser's memory and to be used in calling for the goods.  *In re Appetito Provisions Co. [Inc.],* 3 USPQ2d 1553 (TTAB 1987); *Amoco Oil Co. v. Amerco, Inc.,* 192 USPQ 729 (TTAB 1976).  Therefore, potential consumers are highly unlikely to differentiate the applicant's mark, "AK" (displayed in large block letters) from the registrant's marks, "AK" (displayed in stylized form).  As such, the dominant portion of the applicant's mark and the registrant's marks are identical in sound.

---

[7] According to the Examining Attorney, "[t]he term AMERICAN is geographically descriptive while the term KHAKIS is descriptive of clothing goods."

Also, ... the marks in the instant case are similar in appearance. Specifically, and as stated above, the dominant portion of both marks consists of the same two letters. The only difference being [that] the applicant's mark is displayed in large block form while the registrant's marks are displayed in stylized lettering. When a mark consists of a word portion and a design portion, the word portion is more likely to be impressed upon a purchaser's memory and to be used in calling for the goods or services. *In re Appetito Provisions Co. [Inc.],* 3 USPQ2d 1553 (TTAB 1987); *Amoco Oil Co. v. Amerco, Inc.,* 192 USPQ 729 (TTAB 1976). .... In the instant case, the "design aspects," in the applicant's mark[,] have even less commercial significance than the traditional design portions in the above-cited cases. Rather, the design elements of the applicant's mark consist merely of displaying [the letters] "AK" in large block letters and the addition of two small five-point stars. .... The significance of the differing stylized forms of the marks ... is "diminished by the realization that purchasers do not normally have the opportunity for a side-by-side comparison of the marks and that they generally retain but a vague and overall recollection of marks of this type ...." *In re Instruteck Corporation,* 184 USPQ 618, 620 (TTAB 1974). .... The large block letters used by the applicant does not alter the manner in which these letters are viewed by potential consumers of the goods. .... Accordingly, potential consumers are highly unlikely to differentiate the applicant's mark, "AK" displayed in large block letters, from the registrant's marks, "AK" displayed in stylized form. Accordingly, the dominant portion of the applicant's mark and the registrant's marks are very similar in appearance. And the marks are highly similar in overall commercial impression.

Furthermore, with respect to applicant's argument that the registrant's marks are weak because, as shown by the record, there are several other registrations by third-parties for marks in the clothing field which contain the letters "AK,"[8] the Examining Attorney maintains that "the issue of likelihood of confusion has to be addressed between the registrant's marks and the mark in the instant application, not another mark," and that "it has long been held that each case must be decided on its own merits, [inasmuch as] previous decisions by examining attorneys in approving marks are without evidentiary value and are not binding upon the agency or the board" (citations omitted). In view thereof, and because "even weak marks are entitled to protection against the registration of a similar mark for identical of closely related goods" (citations omitted), the Examining Attorney concludes that "applicant's arguments in favor of registration are not compelling." Confusion is likely, the Examining Attorney insists, because "[t]he dominant portions of the [respective] marks are identical in sound and virtually

---

[8] Specifically, such marks consist of a mark featuring a design of the stylized letters "AK" for, inter alia, belts and belt buckles; the mark "AK AOKANG" and design for, among other clothing items, shirts, sports shoes, boots, football shoes, ties, hats, caps, hosiery, gloves and belts; the mark "AK ANDY & KAREN" and design for men's, ladies' and children's clothing, including, pants, shorts, shirts, sweaters, socks, jackets and underwear; and the mark "AUTHENTIC KIDS AK" and design for children's clothing, namely, fleece tops and bottoms, jackets, pants, shirts, shorts, sweaters and swimsuits.

10

identical in appearance and have a similar commercial impression."

Applicant, while acknowledging that the Examining Attorney is correct that the existence of third-party registrations cannot justify the registration of a confusingly similar mark, argues on the other hand that such registrations may be used to demonstrate that a particular mark is entitled to a narrow scope of protection, as it asserts is the case with each of the cited marks. Specifically, applicant urges that because "the third-party registrations involve apparel ... items ... which are identical or related to the apparel in the cited registrations, one must conclude that the reason there is no likelihood of confusion between the cited marks and the [marks which are the subjects of the] third-party registrations is the fact that the marks themselves are not sufficiently similar." The marks in the third-party registrations, applicant contends, are either so highly stylized or, like applicant's mark, contain additional wording for which the letters "AK" plainly stand or signify, that a likelihood of confusion with the cited marks was not found. Applicant concludes, as set forth in its initial brief, that the letters "AK" per se are not a strong element or feature of marks in the apparel field and that the cited marks are not entitled to a broad ambit of protection inasmuch as:

11

The cited "AK" marks are consistently displayed in a stylized manner with an oval or a circle and with horizontal extensions for each letter. Therefore, it is illogical to assume that the letters "AK," absent their stylized designs, have become a hallmark of a particular source.

Moreover, as also pointed out by applicant in its initial brief:

Applicant does not use the letters "AK" in the same stylized form as shown in the [marks in the] cited registrations nor does it use them within an oval or circle. Furthermore, the letters "AK" in applicant's mark are simply background material behind the words "AMERICAN KHAKIS" and obviously stand for the words "AMERICAN KHAKIS."

Applicant maintains that such differences are significant and that, in particular, the words "AMERICAN KHAKIS," although disclaimed, cannot be disregarded as is the case with the Examining Attorney's analysis. Indeed, as to its mark, applicant insists that "[i]f one feature is dominant, it is the applicant's position that the dominant feature in applicant's mark is AMERICAN KHAKIS because of the visual appearance of these words in the mark." According to applicant:

There is no ironclad rule that disclaimed matter will be disregarded as the dominant or most significant feature of a mark. The TMEP, § 1213.11, simply states that this is the typical situation. It is respectfully contended that where the disclaimed words are superimposed over initials, which obviously stand for the first letters of the disclaimed words, it is

12

not logical to claim that the dominant portion of this mark is the term "AK."

Lastly, inasmuch as the Examining Attorney, in his final refusal, "has conceded that 'when the mark consists of a word portion and a design portion, the word portion is more likely to be impressed upon a purchaser's memory and to be used in calling for the goods or services,'" applicant consequently argues in its initial brief that, under such an analysis, it is the language "AMERICAN KHAKIS" which constitutes the word portion of its mark while the term "AK" forms the design portion.  This is particularly the case, applicant further notes, in light of the fact that "the words AMERICAN KHAKIS are superimposed over the letters AK," so that "one would have to assume that these words, in bold black letters, are the dominant portion of the mark."  In any event, applicant stresses that irrespective of which element of its mark is dominant, "it is obvious ... that the letters AK stand for AMERICAN KHAKIS" and, "[t]hus, it is highly unlikely, if not impossible, for a person ... to disregard the words for which the initials stand."

While concededly a close question, we are nonetheless constrained to agree with applicant that confusion is not likely, on this record,[9] from the contemporaneous use of the

---

[9] For instance, we note that there is no evidence herein that the cited marks are famous.

respective marks in connection with closely related items of sportswear and athletic clothing. As applicant persuasively asserts in its reply brief, the Examining Attorney simply "has recited various mechanical rules of construction for comparing the marks ... and concluded that 'the dominant portion of the applicant's mark consists of the exact two letters ... as the registrant's marks,'" namely, the letters "AK," and that as such the respective marks are identical in sound, are similar in appearance and are highly similar in overall commercial impression. We concur with applicant that such generalizations are inappropriate in that they fail to take into proper account the fact that visually the respective marks contain significant distinguishing design elements and the fact that a disclaimer does not remove the disclaimed matter from a mark. Here, applicant's mark is more than just a block letter display of the letters "AK," just as registrant's marks are more than merely stylized presentations of the letters "AK."

In particular, we need not decide whether the letters "AK" form the dominant part of applicant's "AK AMERICAN KHAKIS" and design mark. Clearly, such letters are visually prominent, but they also serve as background for the display of the words "AMERICAN KHAKIS," which appear in the same style of lettering as the letters "AK" and, being superimposed over such letters, are plainly not subordinate matter. Indeed, even though

14

descriptive of applicant's goods, we agree with applicant that such words would be recalled and spoken when consumers look for and/or ask about applicant's goods and that the letters "AK" would be seen and understood by customers as standing for the words "AMERICAN KHAKIS." The words "AMERICAN KHAKIS," although disclaimed, thus form a significant element of applicant's mark, in terms of sound, appearance, meaning and overall commercial impression and cannot be ignored. Registrant's marks, while likewise containing the letters "AK," are otherwise substantially different in sound, appearance, connotation and basic commercial impression from applicant's mark. In particular, the letters in registrant's marks are highly stylized and are surrounded, in each instance, by either a circle or an oval as the vehicle for their display. Such design features have nothing in common with applicant's mark.

As stated by our principal reviewing court in In re Electrolyte Laboratories Inc., 913 F.2d 930, 16 USPQ2d 1239, 1240 (Fed. Cir. 1990):

> More dominant features will, of course, weigh heavier in the overall impression of a mark. *Giant Food, Inc. v. Nation's Foodservice, Inc.*, 710 F.2d 1565, 218 USPQ 390 (Fed. Cir. 1983). There is no general rule as to whether letters or design will dominate in composite marks; nor is the dominance of letters or design dispositive of the issue. No element of a mark is ignored simply because it is less dominant, or would not have trademark significance if

used alone. *See Spice Islands, Inc. v. Frank Tea & Spice Co.*, 505 F.2d 1293, 184 USPQ 35 (CCPA 1974) (improper to ignore portion of composite mark).

.... However, the spoken or vocalizable element of a design mark, taken without the design, need not of itself serve to distinguish the goods. The nature of stylized letter marks is that they partake of both visual and oral indicia, and both must be weighed in the context in which they occur. *See, e.g., Georgia-Pacific Corp. v. Great Plains Bag Co.*, 614 F.2d 757, 760, 204 USPQ 697, 699 (CCPA 1980):

> It must be remembered that [registrant's] trademark consists of highly stylized letters and is therefore in the gray region between pure design marks which cannot be vocalized and word marks which are clearly intended to be.

In *Georgia-Pacific* the court observed that even if the letter portion of a design mark could be vocalized, that was not dispositive of whether there would be likelihood of confusion. A design is viewed, not spoken, and a stylized letter design can not be treated simply as a word mark. *[In re] Brundy [Corp.]*, 300 F.2d [938,] ... 940, 133 USPQ [196,] ... 197 [(CCPA 1962)].

Keeping the above in mind, we find ourselves essentially in agreement with applicant that, as argued in its reply brief, the appropriate analysis in this appeal is along the lines set forth in the "similar" case of Georgia-Pacific Corp. v. General Paper Corp. of Pittsburgh, 196 USPQ 762, 772

16

(TTAB 1977),[10] rather than that utilized in *Instruteck*, <u>supra</u>,[11] which would appear to be the basis of the analysis followed by the Examining Attorney.  This is because the degree of stylization and integration of the letters forming both of

---

[10] The Board, in such case, held that there was no likelihood of confusion from contemporaneous use of, <u>inter</u> <u>alia</u>, the mark "GP" and design, as reproduced at left below (although lined for the color red, color was not a feature of the mark), for "printing and duplicating papers" and the mark "GP" and design, as depicted at right below, for a wide variety of forestry products, including "printing and duplicating papers".

 

[11] The Board, in finding a likelihood of confusion therein between a mark consisting of a stylized display of the letters "IC" for "phonographs and tape recorders" and the mark "IC SILENCER" and design for "citizens band transceivers," set forth the following analysis:

> Turning, therefore, to the marks in issue, a subjective analysis of these marks based solely on a visual similarity would be applicable if these marks are essentially design marks and not capable of being spoken.  See:  In re Burndy Corporation, 133 USPQ 196(CCPA 1962); and In re Anderson Electric Corporation, 152 USPQ 245 (CCPA 1967).  However, the marks herein are capable of being spoken and therefore capable of being used to call for and refer to the goods in connection with which they are used.  That is, it is readily discernible that they both consist essentially of the letters "IC" and would project this significance to individuals viewing them, notwithstanding the presence in the registered mark of the suggestive word "SILENCER" and design.  The identifying feature of each mark, therefore, is the letters "IC" and, although they are presented in different graphic displays, the significance of this factor is diminished by the realization that purchasers do not normally have the opportunity for a side-by-side comparison of the marks and that they generally retain but a vague and overall recollection of marks of this type which would be the letters "IC".

registrant's "AK" and design marks is so high that they are more properly treated, in our view, as being akin to pure design marks rather than simply stylized displays of word marks as in *Instruteck*. Thus, as was stated by our principal reviewing court:

> Petitioner's mark is clearly and recognizably the letters or notation "GP". Registrant's mark, while undoubtedly incorporating the letters "GP", falls far short of being considered a literal mark. That is, the letters "GP" have been so artistically arranged or incorporated in the overall logo that, at first impact, the mark projects the image of a distinctive design mark without any attempt by the viewer to penetrate the intricacies of the design to uncover the letters "GP" which would take on this significance only by reference to respondent's trade name. Under these circumstances and even taking into consideration the fallibility of consumers in their recollection of trademarks ..., it is not believed that a purchaser would equate the two marks or even form an association therewith. See: In re Burndy Corporation, 133 USPQ 196 (CCPA 1962); In re Anderson Electric Corporation, 152 USPQ 245 (CCPA 1967); and In re Rodix, Inc., 187 USPQ 255 (TT&A Bd. 1975). ....

Georgia-Pacific Corp. v. General Paper Corp. of Pittsburgh, 196 USPQ at 772.

Considering, therefore, the marks at issue in their entireties, we similarly find that each of registrant's marks is so highly stylized that, at first sight, "the mark projects the

---

184 USPQ at 620.

image of a distinctive design mark," with the "intricacies" of the letters "AK," which are displayed within an oval or a circle and with horizontal extensions for each letter, taking on their significance only by reference to registrant's trade name.[12] While the letters "AK" in applicant's mark are also displayed together, they nevertheless are immediately recognizable as such due to their block letter format and the descriptive words "AMERICAN KHAKIS," which are superimposed in the same block letter style over the letters "AK." Given the further contrast provided by the linearity of the design in which the letters "AK" and the words "AMERICAN KHAKIS" are incorporated in applicant's mark, we think that even when allowance is made for the fallibility of consumers' memory of marks, applicant's and registrant's marks in their entireties are not so similar in sound, appearance, connotation or commercial impression that, merely because such marks share the letters "AK," confusion as to origin or association is likely. See, e.g., Georgia-Pacific Corp. v. General Paper Corp. of Pittsburgh, supra; and Georgia-Pacific Corp. v. Great Plains Bag Co., 200 USPQ 601, 607 (TTAB 1978),[13] aff'd, supra.

---

[12] The cited registrations issued to Bernard Athletic Knit & Enterprises Ltd.

[13] The Board, using the same analysis as in Georgia-Pacific Corp. v. General Paper Corp. of Pittsburgh, supra, found no likelihood of confusion from contemporaneous use of, among other things, the mark "GP" and design, as illustrated at left below, for "paper and plastic

19

In summary, we conclude that as in In re Electrolyte Laboratories Inc., supra, the Examining Attorney erred in his dominant focus on the letters "AK" in the respective marks to the substantial exclusion of the other, significantly different elements therein.  We consequently believe that applicant's "AK AMERICAN KHAKIS" and design mark for "sportswear[,] namely men's and women's pants, jeans, shorts and shirts," is not so similar to either of registrant's "AK" and design marks for various items of athletic clothing that the contemporaneous use of the respective marks in connection with such closely related articles of apparel is likely to cause confusion.

**Decision:**  The refusal under Section 2(d) is reversed.

---

bags" and the mark "GP" and design, as depicted at right below, for a wide variety of forestry products, including "paper bags and receptacles".

