**THIS OPINION IS A
PRECEDENT OF THE TTAB**

Mailed:
August 7, 20007

**UNITED STATES PATENT AND TRADEMARK OFFICE**
————

**Trademark Trial and Appeal Board**
————

In re 1st USA Realty Professionals, Inc.
————

Serial No. 78553715
———

Renee L. Mitchell and Jessica A. Benford of Ryley Carlock &
Applewhite for 1st USA Realty Professionals, Inc.

Dominick Salemi, Trademark Examining Attorney, Law Office
106 (Mary I. Sparrow, Managing Attorney)
———

Before Seeherman, Walters and Bucher, Administrative
Trademark Judges.

Opinion by Seeherman, Administrative Trademark Judge:

1st USA Realty Professionals, Inc. has appealed from

the final refusal of the Trademark Examining Attorney to

register the mark 1st USA and design, as shown below, with

USA disclaimed, for real estate brokerage and listing services.[1]



Applicant has provided the following description of the mark:

> The mark consists of a multiple star design. The stars increase in size as they progress from the background to the foreground. The largest star appears directly behind the words '1st USA'.

Registration has been refused pursuant to Section 2(d) of the Trademark Act, 15 U.S.C. §1052(d), on the ground that applicant's mark, as used in connection with applicant's identified services, so resembles the mark FIRST USA in stylized form, as shown below, with the word USA disclaimed, previously registered for "banking and credit card services, credit card processing services, travellers' check issuance, insurance underwriting services, and financial investment services in the field of

---

[1] Application Serial No. 78553715, filed January 25, 2005, asserting first use and first use in commerce as of October 1, 2004.

securities,"[2] that it is likely to cause confusion or mistake or to deceive.

# FIRST USA

The appeal has been fully briefed.

We first address some evidentiary points. With its appeal brief applicant has submitted a copy of a registration for another 1st U.S.A. mark which it asserts it owns. Normally such evidence would be viewed as untimely and would not be considered. See Trademark Rule 2.142(d), which provides that the record in the application should be complete as of the filing of the appeal. However, applicant has referenced this registration in connection with its argument of lack of actual confusion, in each of its filings, beginning with its response to the first Office action. Further, the Examining Attorney has addressed applicant's argument regarding the lack of any evidence of actual confusion in both his denial of the request for reconsideration and in his appeal brief. Although he has not specifically referred to applicant's prior registration, a fair reading of his statements is

---

[2] Registration No. 1700818, issued July 14, 1992; Section 8 & 15 affidavits, respectively, accepted and acknowledged; renewed.

that he has considered it because it is the main point of applicant's argument.[3]  Accordingly, we deem the Examining Attorney to have treated this registration as being of record, and we have therefore considered it.

With its response to the first Office action applicant listed the particulars of three third-party applications/registrations.  This is not the proper way to make such applications and registrations of record.  See In re Volvo Cars of North America Inc., 46 USPQ2d 1455 (TTAB 1998).  However, because the Examining Attorney did not advise applicant that the listing was insufficient at a point where applicant could have corrected the error, the application and registrations are deemed to have been stipulated into the record, to the extent that the specific data provided by applicant has been considered.  See TBMP §1208.02.  Applicant also submitted, with its request for reconsideration, a listing of approximately 65 marks taken from the USPTO TESS database for marks containing the words "FIRST" or "1ST" or "USA."  This listing is, as noted, insufficient to make the applications and registrations of record.  In re Ruffin Gaming LLC, 66 USPQ2d 1924, 1925 n.3 (TTAB 2002).  Nor can we deem the Examining Attorney to

---

[3]  Needless to say, the Examining Attorney never raised any objection with respect to consideration of the registration.

have waived any objection to this document by failing to advise applicant of the insufficiency, since at the point that applicant filed the list it no longer had an opportunity to add to the record of the application. Accordingly, this list has not been considered. We also point out that, even if we were to consider the list, it has no probative value since it does not show the goods or services for which the marks were registered. (It appears from the wording in the marks themselves that many are for goods or services that have no relation to the services at issue herein, e.g., FIRST CLASS ESPRESSO EXPERIENCE, 1ST MEDICAL RESPONSE, FLOOR SAFETY USA.) In addition, almost all of the listed marks are for applications, rather than registrations. Third-party applications have no evidentiary value other than to show that they were filed. In re Juleigh Jeans Sportswear Inc., 24 USPQ2d 1694, 1699 (TTAB 1992).

With its reply brief applicant argues that the third-party registrations made of record by the Examining Attorney to show the relatedness of the services should not be given any weight. To the extent that the registrations are based on Section 44 or Section 66 of the Trademark Act, applicant's objection is well-taken. Because these registrations are not based on use in commerce they have no

probative value in showing the relatedness of the services, and they have not been considered. See In re Albert Trostel & Sons Co., 29 USPQ2d 1783 (TTAB 1993). Nor do we find probative those third-party registrations which are for services that are different from those identified in the application and the cited registration. However, as discussed infra, several of the registrations are based on use in commerce and include the services that are identified in both applicant's application and the cited registration. Those registrations have been considered, and given appropriate evidentiary weight.

This brings us to the basis for refusal of applicant's registration, namely, whether use of applicant's mark for its identified services is likely to cause confusion with the cited registration. Our determination of this issue is based on an analysis of all of the probative facts in evidence that are relevant to the factors set forth in In re E. I. du Pont de Nemours & Co., 476 F.2d 1357, 177 USPQ 563 (CCPA 1973). See also, In re Majestic Distilling Co., Inc., 315 F.3d 1311, 65 USPQ2d 1201 (Fed. Cir. 2003). In any likelihood of confusion analysis, two key considerations are the similarities between the marks and the similarities between the goods and/or services. See Federated Foods, Inc. v. Fort Howard Paper Co., 544 F.2d

6

1098, 192 USPQ 24 (CCPA 1976). See also, In re Dixie Restaurants Inc., 105 F.3d 1405, 41 USPQ2d 1531 (Fed. Cir. 1997).

With respect to the services, applicant has discussed the respective services by asserting that the registrant is not likely to expand its services to those identified in applicant's application. The concept of expansion of trade is generally addressed in the context of the issue of priority in an inter partes proceeding. For example, when an opposer has prior rights for certain services, but began using its mark for the same services as the applicant after the applicant did, we examine whether the applicant's services are within the natural scope of expansion of the opposer's original services to determine whether the opposer's priority with respect to the original services will carry over to give it priority with respect to the applicant's services. See May Dep't Stores Co. v. Prince, 200 USPQ 803, 808-09 (TTAB 1978), cited by applicant, in which the Board stated that "as the first commercial user of a black and white diagonal design which is arbitrary in its concept and use, opposer possesses rights therein sufficient to preclude the registration thereof by a subsequent user of the same or a similar mark for any goods which purchasers might reasonably be likely to assume

7

emanate from it in the normal expansion of its business under the mark notwithstanding that the expansion to a particular product might be subsequent in time to that of another party."

The expansion of trade doctrine has a more limited application in an ex parte proceeding. In In re General Motors Corporation, 196 USPQ 574 (TTAB 1977), the case cited in Trademark Manual of Examining Procedure Section 1207.01(a)(v) which discusses the relatedness of goods and services in terms of the expansion of trade doctrine, and which section was cited by applicant in its brief, the applicant therein argued that it was not within the normal expansion of trade of a manufacturer of automotive shock absorbers to manufacture automobiles. The Board, however, analyzed the issue as being whether purchasers, when seeing the identical mark applied to both automobiles and automotive shock absorbers, would be likely to attribute a common source or origin to such closely related goods. In affirming the refusal of registration, the Board found that consumers were likely to assume a common source for the goods, and was not persuaded by the applicant's argument that the registrant was unlikely to expand its business of making shock absorbers to also make automobiles.

Thus, we look at the question of the relatedness of the services identified in applicant's application and those in the cited registration based on whether consumers are likely to believe that the services emanate from a single source, rather than whether the Examining Attorney has shown that the registrant herein has or is likely to expand its particular business to include the services of applicant.[4]

With respect to the du Pont factor of the similarity of the goods and/or services, the case law is clear that it is not necessary that the goods or services of applicant and the registrant be similar or competitive, or even that they move in the same channels of trade to support a holding of likelihood of confusion. It is sufficient that the respective goods or services are such that they would or could be encountered by the same persons under circumstances that could, because of the similarity of the

---

[4] We do not mean to suggest that the concept of an expansion of trade has no applicability in the determination of likelihood of confusion in an ex parte proceeding. However, that concept is considered through a traditional relatedness of goods and services approach. Obviously if there is evidence that third parties offer both types of goods or services, that indicates that an entity could expand its business to include both types of goods or services. It is also evidence that the public would believe that both types of goods or services emanate from a single source. It is not necessary, however, in the context of an ex parte proceeding, for the Office to show that the owner of the particular registration that has been cited against the application has expanded or will expand its goods or services.

marks, give rise to the mistaken belief that they originate from the same producer.  See In re International Telephone & Telegraph Corp., 197 USPQ 910, 911 (TTAB 1978).

In this case, the Examining Attorney has shown this relatedness of the services by submitting a number of third-party registrations which show that a single mark has been adopted by various entities for both the services identified in applicant's application and those identified in the cited registration.  Third-party registrations which individually cover a number of different items and which are based on use in commerce serve to suggest that the listed goods and/or services are of a type which may emanate from a single source.  See In re Infinity Broadcasting Corporation, 60 USPQ2d 1214, 1217-1218 (TTAB 2001).  These registrations include No. 2599438 for, inter alia, banking services, credit card services and real estate brokerage and management services; No. 2844824 for, inter alia, banking services, credit card services and real estate brokerage services; No. 2978625 for, inter alia, insurance underwriting services and real estate brokerage services; No. 2902461 for, inter alia, financial investment in the field of securities, real estate brokerage and real estate listing; No. 3068986 for, inter alia, banking services and real estate brokerage services; and No.

2941982 for, inter alia, banking services and real estate brokerage.[5]

Applicant has argued that the registrant's and applicant's services are in separate, heavily regulated industries. To the extent that applicant is asserting (without any evidentiary support) that these services are not rendered by the same entities, that assertion is belied by the third-party registrations, which show that entities have adopted a single mark for both types of services.

Applicant also argues that applicant is not a financial institution, and does not provide financing services, while the registrant, it asserts, provides banking and credit card services that have nothing to do with real estate listing and agent services, and the registrant does not provide mortgage lending under the cited mark. Applicant also asserts that because the cited

_____

[5] As noted previously, we have not considered those registrations that were based on Section 44 or Section 66 of the Trademark Act, or those registrations which are for services that are different from those identified in the application and the cited registration. We consider it poor examination practice to submit a large number of third-party registrations without regard to whether they have any probative value. Moreover, submitting a large number of third-party registrations without highlighting particularly relevant ones in the appeal brief is not helpful. Here, the Examining Attorney has merely stated, in his brief, that "Evidence supporting the relationship of banking and real estate services was provided by attorney [sic] in the form of numerous trademark registrations…." p. 5. Since the Examining Attorney recognizes that he made of record numerous trademark registrations, he should have pointed out which ones were most

registration identifies registrant's services in detail, it is clear that the registrant has no intention of providing real estate brokerage or finance services.

The problem with applicant's argument is that it is based on applicant's actual activities and what it asserts are the registrant's actual business practices. However, the question of likelihood of confusion must be determined based on an analysis of the mark as applied to the goods and/or services recited in an applicant's application vis-à-vis the goods and/or services recited in the cited registration, rather than what the evidence shows the goods and/or services to be. See Canadian Imperial Bank of Commerce v. Wells Fargo Bank, N.A., 811 F.2d 1490, 1 USPQ2d 1813 (Fed. Cir. 1987); In re William Hodges & Co., Inc., 190 USPQ 47 (TTAB 1976).

The third-party registrations made of record show that entities may adopt a single mark for the services identified in both applicant's application and the cited registration. Accordingly, if consumers encounter these services rendered under the same or a confusingly similar mark, they are likely to believe that they emanate from the

---

probative, instead of submitting both probative and non-probative registrations and leaving it to the Board to sort through them.

same source.  The du Pont factor of the similarity of the services favors a finding of likelihood of confusion.

The next du Pont factor we consider is that of the channels of trade.  Applicant argues, with respect to this factor, that applicant and registrant "have customers with different needs and employ different means of promotion to increase visibility to potential customers."  Brief, p. 8.  Although we recognize that the services are different, as we stated in our discussion of the relatedness of the services, it is not necessary that the services be similar or competitive.  There is no question that both applicant's and the registrant's identified services are marketed to the general public.  Nor can there be any doubt that consumers who seek real estate brokerage services would also be consumers of banking services and credit card services.  Thus, the services would be encountered by and be rendered to the same consumers.  Further, although there is no direct evidence that the services are offered together, the third-party registrations do show that they may be rendered by the same entities.

Applicant also asserts that the services are promoted through different means, stating that "real estate agents often use signs on properties for sale, newspapers, specialty mailers and Internet listings" while "credit card

13

companies tend to send offers to specific individuals, advertise in print mediums or promote through television." Brief, p. 9. We point out that the cited registration is not limited to services rendered by credit card companies, but includes, inter alia, banking services and insurance underwriting services. Applicant's own statement acknowledges an overlap in even the credit card services to which applicant has limited its comments, i.e., both can be advertised in newspapers and through direct mail. Real estate brokerage services may also be advertised on television, which applicant recognizes is a medium in which credit card services are advertised. Banking services may also be advertised in newspapers and on television. Thus, the respective services may be promoted through some of the same media.

Because applicant's and the registrant's identified services can be rendered to the same consumers, this du Pont factor somewhat favors a finding of likelihood of confusion.

The next du Pont factor we consider is the similarity of the marks. The registered mark is for the words FIRST USA in a slightly stylized typestyle. However, the stylization is so minimal that it does not make a real commercial impression. Because of this, consumers will

view the mark as merely the words FIRST USA. Applicant's mark, which consists of the words 1st USA and a design, is equivalent in its literal element to the registrant's mark. The symbol "1st" is readily understood as a numerical representation of the word "FIRST." Thus, the marks are identical in pronunciation and connotation. Similarity in sound alone may be sufficient for a finding of likelihood of confusion. See Krim-Ko Corporation v. The Coca-Cola Company, 390 F.2d 728, 156 USPQ 523 (CCPA 1968). This is especially true in this case, where the application and registration are for services which may be referred to or recommended by word of mouth. See Miles Laboratories, Inc. v. Whorton Pharmacal Company, 199 USPQ 758 (TTAB 1978).

Applicant's mark differs in appearance from the registered mark in that it contains a background of stars, but we do not consider this design to be sufficient to distinguish the marks. The stars are clearly background material, with the words 1st USA being superimposed on the stars design. Further, because a stars motif is often associated with the United States, the stars design tends to simply reinforce the component USA in applicant's mark, rather than having a separate connotation or making a separate impression. If a mark comprises both a word and a design, then the word is normally accorded greater weight

15

because it would be used by purchasers to request the goods or services. In re Appetito Provisions Co., 3 USPQ2d 1553 (TTAB 1987). Although we must compare the marks in their entireties, it is a well-established principle that, in articulating reasons for reaching a conclusion on the issue of likelihood of confusion, there is nothing improper in stating that, for rational reasons, more or less weight has been given to a particular feature of a mark. See In re National Data Corp., 753 F.2d 1056, 224 USPQ 749, 751 (Fed. Cir. 1985).

We do not agree with applicant that the dominant element of its mark is the star design because the word USA has been disclaimed, and because both 1st and USA are weak elements. Although USA has a geographic significance, and 1st and FIRST can have a laudatory significance, we cannot conclude that the combination 1st USA/FIRST USA is weak. Applicant has not made of record any evidence of third-party uses of marks containing either the terms 1st USA or FIRST USA, such that we could conclude that the public is so used to seeing marks with 1st USA/FIRST USA that they would look to other elements of the marks, such as applicant's stars design, in order to distinguish them. We note that applicant did submit information about third-party applications/registrations. However, third-party

16

applications and registrations are not evidence that the marks shown therein are in use, or that the public is familiar with them. More importantly, of the two registrations and the single application for which applicant submitted information, only Registration No. 2460823 contains the combination FIRST USA. This registration, for FIRST USA CONNECTIONS, is owned by the same entity which owns the cited registration.[6] Although we acknowledge that there is a suggestive connotation to 1st USA or FIRST USA in the respective marks (the identical suggestive connotation, we should add), the words still make a stronger impact on consumers than the background stars design in applicant's mark. Consumers will remember the words more than the background design because they will refer to the mark by the words, i.e., consumers are more likely to refer to applicant's services as 1st USA rather than as the real estate brokerage with the star design.

---

[6] As noted previously, applicant submitted data regarding two registrations and a pending application, rather than copies of the documents themselves, but because the Examining Attorney did not advise applicant of this insufficiency at a point that applicant could have cured it, we have considered the information. The second registration, No. 2434366 is for a different mark, 1ST FINANCIAL BANK USA. The third mark referenced by applicant is for a third-party application. Such applications, as noted previously, are evidence only of the fact that they have been filed; they cannot be used to show that a term is descriptive or suggestive. The value of this principle is made clear in the present case, because Office records show that this application has been abandoned.

17

Accordingly, despite the fact that there are some specific differences in the marks, overall they convey the same commercial impression, and the similarities in appearance caused by the identical dominant word elements outweigh the differences due to the stylization of the words and the presence of the design element in applicant's mark. The du Pont factor of the similarity of the marks favors a finding of likelihood of confusion.

In reaching this conclusion, we have considered applicant's argument that its mark and the registrant's mark generally appear in different advertising media, e.g., applicant's mark appears on signs located on real property and in real estate listings, while the registrant's mark "appears on credit card statements and solicitations received by consumers via the mail or a banking institution." Brief, p. 14.[7] If anything, the fact that the respective marks will not appear with each other increases the likelihood of confusion, since consumers will not have the opportunity of making side-by-side comparisons between the marks, and must rely upon their imperfect

---

[7] We point out that there is no evidence that these are the only methods by which consumers will encounter the respective marks, and, as noted above, advertisements for both services can appear, inter alia, in television commercials and newspapers.

recollections.  Dassler KG v. Roller Derby Skate Corporation, 206 USPQ 255 (TTAB 1980).

We have also considered applicant's argument that its mark "is typically accompanied by the phrase, 'Realty Professionals Inc.'"  Brief, p. 13.  Applicant cannot rely on a phrase that is not part of the applied-for mark in order to distinguish its mark from the cited mark.  We must determine likelihood of confusion based on the mark for which registration is sought.

The next du Pont factor we consider is the conditions under which and the buyers to whom sales are made, i.e., "impulse" vs. careful, sophisticated purchasing.  The consumers for both applicant's and the registrant's identified services are the public at large, insofar as the public includes people who wish to buy or sell homes, or to have bank accounts or credit cards, and therefore we do not regard them as being particularly sophisticated.  Further, although banking services and credit card services involve financial transactions, we do not believe that such services are necessarily obtained only after careful consideration.  Because banks are federally insured, consumers do not have to investigate the financial stability of a particular bank to be sure that their money is secure.  Applicant relies on Amalgamated Bank of New

19

York v. Amalgamated Trust & Savings Bank, 842 F.2d 1270, 6 USPQ2d 1305 (Fed. Cir. 1988) in support of its argument that customers of banks are careful purchasers. However, the Court in Amalgamated specifically recognized that while some consumers choose their banks with care, others do not. Thus, for purposes of determining likelihood of confusion, we cannot treat bank customers as exercising more than ordinary care. As for credit card services, the care that is taken in such transactions is on the part of the company offering the service, in terms of the credit-worthiness of the consumer, rather than on the part of the consumer who uses the service. We agree with applicant, however, that real estate brokerage services, whether on the part of the person selling a home or buying one, would be chosen with some degree of care. Although this du Pont factor favors applicant to this extent, we do not consider it to be dispositive because the decision to obtain the services of the registrant would not be the subject of such careful consideration. Thus, a consumer who was familiar with applicant's services offered under the applied-for mark might well assume, because of the strong similarity of the marks, including the virtually identical nature of the word portions of both marks, that the marks identify services emanating from a single source.

The final du Pont factor discussed by applicant and the Examining Attorney is the length of time during and conditions under which there has been concurrent use without evidence of actual confusion.  Applicant argues, at page 4 of its brief, that the marks have co-existed in the marketplace for over eleven years without any known instances of confusion.  Applicant relies, in connection with this factor, not on its use of the applied-for mark, but on a mark, shown below, that it previously used and has registered.



Applicant asserts that the current mark "represents only a slight redesign to modernize Applicant's Prior Mark."

We have many problems with applicant's position. First, there is an inconsistency as to the facts asserted by applicant.  Applicant claims that it has used the previous mark since 1995, but its certificate of registration lists a first use date of 1999.  Second, whatever the correct date is, we consider the present mark

and the prior mark sufficiently different that we can draw no conclusions as to lack of instances of actual confusion with the present mark based on applicant's experiences with its prior mark. To state the obvious, the prior mark contains the words "Realty Professionals, Inc." Although these words are disclaimed, they are still part of the mark, and would be seen by consumers as applicant's trade name. The stars design, too, has a more prominent position, as the stars are depicted separately from 1st U.S.A., rather than having the words superimposed on them.[8] Third, there is no evidence of record to show the extent of use or advertising of applicant's mark and the registrant's mark, such that we can conclude that there has been an opportunity for confusion to occur, if confusion were likely. Finally, as the Court stated in In re Majestic Distilling Co., supra, 65 USPQ2d at 1205, the lack of evidence of actual confusion carries little weight, especially in an ex parte context. Accordingly, we consider this du Pont factor as being neutral.

---

[8] We find it interesting that applicant believes that its current mark is only a "slight redesign" of its previous mark, but considers that its current mark and the cited mark have "significant differences." Brief, p. 13. We view the applied-for mark as being "far more different" from applicant's previous mark than it is from the cited mark.

After considering all of the du Pont factors on which we have evidence and/or argument, we find that applicant's mark as used for its identified services is likely to cause confusion with the cited registration.

Decision:  The refusal of registration is affirmed.