This Opinion is a
Precedent of the TTAB

Mailed:
June 26, 2013

**United States Patent and Trademark Office**

Trademark Trial and Appeal Board

———

*Joel Gott Wines, LLC*

*v.*

*Rehoboth Von Gott, Inc.*

———

Opposition No. 91197659

to application Serial No. 77943657

———

J. Scott Gerien and Aleson R. Kent of Dickenson Peatman & Fogarty for Joel Gott Wines, LLC.

James T. Hollin, Jr. of JT Hollin, Jr, Attorney at Law PC for Rehoboth Von Gott, Inc.

———

Before Bucher, Lykos and Wolfson, Administrative Trademark Judges.

Opinion by Wolfson, Administrative Trademark Judge:

Rehoboth Von Gott, Inc. ("applicant") filed an application to register the mark depicted below:



for:

> Nutritionally fortified water; vitamin enriched water; vitamin supplement in tablet form for use in making an effervescent beverage when added to water; water-based personal lubricants in International Class 5; and

> Aerated mineral waters; aerated water; bottled artesian water; bottled drinking water; bottled water; carbonated waters; coconut water; distilled drinking water; drinking water; drinking water with vitamins; essences for making flavoured mineral water; essences for the preparation of mineral waters; flavored bottled water; flavoured mineral water; glacial water; lithia water; magnetically treated water for human consumption and not for medical purposes; mineral and aerated water; mineral and carbonated waters; mineral water; purified bottled drinking water; quinine water; scented water for making beverages; seltzer water; soda water; sparkling water; spring water; still water; syrups for making flavoured mineral waters; table waters in International Class 32.[1]

Joel Gott Wines, LLC ("opposer") opposed the registration of applicant's mark under Section 2(d) of the Trademark Act, 15 U.S.C. § 1052(d), on the ground of priority of use and likelihood of confusion with opposer's previously used and registered marks GOTT and JOEL GOTT in standard character form for "wine" in International Class 33.[2]  As further grounds for opposition, opposer alleges that

---

[1] Application Serial No. 77943657, filed February 24, 2010, pursuant to Section 1(b) of the Trademark Act, alleging that applicant has a bona fide intent to use the mark in commerce. The description of the mark is as follows: "The mark consists of the stylized wording 'GOTT LIGHT' and the design of a stylized wave of water surging upward from right to left.  At the bottom of the wave design are depictions of molecular structures.  There is a stylized elliptical-shaped cloud-like design above the word 'GOTT' and a horizontal border running along the top length of the mark."  Applicant also entered the following translation statement and disclaimer: "The English translation of GOTT in the mark is God" and "No claim is made to the exclusive right to use LIGHT apart from the mark as shown."
[2] Registration No. 3333020 for the mark GOTT for "wine" registered November 6, 2007 on the Supplemental Register; Section 8 affidavit accepted.  Registration No. 2842773 for the mark JOEL GOTT for "wine" registered May 18, 2004; Sections 8 and 15 combined affidavit accepted and acknowledged.

2

applicant's mark is merely descriptive under Section 2(e)(1) of the Trademark Act, 15 U.S.C. § 1052(e)(1),[3] and that the application is void *ab initio* because applicant lacked a *bona fide* intent to use the mark on the identified goods at the time of filing its application. In its answer, applicant denied the salient allegations under Sections 2(d) and 2(e)(1), and in its amended answer, applicant denied the salient allegations of the no bona fide intent to use claim.

Although the mark GOTT VINES was not pleaded in the notice of opposition, in a footnote to its trial brief, opposer refers to its alleged common law rights in the mark. We do not find, however, that opposer's testimony and evidence regarding this mark have fairly apprised applicant that opposer intended to rely upon its alleged rights to the mark GOTT VINES apart from the marks GOTT and JOEL GOTT.[4] Therefore, we have given the mark GOTT VINES no further consideration. *See* Fed. R. Civ. P. 15(b); TBMP § 507.03(b) (3d ed. rev. 1 June 2012).

Evidentiary Matters

Before proceeding to discuss the substantive merits of the case, we address the following evidentiary matters. On May 15, 2012, during its testimony period, applicant filed a document entitled "Supplementation of Previous Disclosure by

---

[3] This claim was not argued in the brief and accordingly is considered waived. *See e.g., Knight Textile Corp. v. Jones Investment Co.*, 75 USPQ2d 1313, 1314 n.4 (TTAB 2005).
[4] The testimony provided by opposer regarding the mark GOTT VINES was limited to Mr. Gott's statement that opposer started using the mark in 1997, and a brief description of GOTT VINES as a sub-brand "inside the Joel Gott Wines brand." Gott dep., pp. 6, 10. The evidence of use of the mark GOTT VINES is not highly probative; it consists of copies of Certificates of Label Approval (COLA's) issued by the Alcohol and Tobacco Tax and Trade Bureau for labels that include the mark GOTT VINES. Gott dep., p. 8, exhibit No. 3; opposer's Notice of Reliance, exhibit No. 11. We note that COLA's are not proof that the labels were actually put into use, and the labels themselves use the mark in a clearly subordinate manner to opposer's primary mark JOEL GOTT.

Applicant." Attached to the document is the declaration of Ms. Violeta Tumen, applicant's corporate secretary, and accompanying exhibits in the form of advertising materials from Peru. On June 8, 2012, opposer filed a motion to strike the declaration and accompanying exhibits on the ground that the filing was procedurally improper. Applicant filed a brief in response to the motion to strike, and the Board deferred determination of the motion until final decision. We hereby grant opposer's motion to strike.

There are a number of ways documents may be introduced into the record under a notice of reliance in a Board proceeding. Certain documents may qualify for admission under Trademark Rule 2.122(e) as official records or printed publications. Documents may qualify for admission if they were provided as a response to an interrogatory, or authenticated by a request for admission, when offered by the adverse (receiving or non-producing) party under Trademark Rule 2.120(j)(1). *See* TBMP §§ 704.10; 704.11 ("Documents provided as all or part of an answer to an interrogatory may be made of record, as an interrogatory answer, by notice of reliance…."; "A party that has obtained documents through disclosure or under Fed. R. Civ. P. 34 may serve on its adversary requests for admission of the authenticity of the documents, and then, during its testimony period, file a notice of reliance, under 37 CFR § 2.120(j)(3)(i), on the requests for admission, the exhibits thereto, and its adversary's admissions….").[5] Documents produced in response to a

---

[5] A discovery deposition, an answer to an interrogatory, an admission made in response to a request for admission, or a written disclosure (but not a disclosed document) produced by an adverse party may also qualify for admission by way of a notice of reliance under Trademark Rule 2.120(j).

document production request cannot otherwise be made of record under a notice of reliance absent a stipulation of the parties approved by the Board. Trademark Rule 2.120(j)(3)(ii); TBMP § 704.11(7) ("documents obtained through disclosure or under Fed. R. Civ. P. 34 may be made of record by stipulation of the parties.").[6]

Evidence that does not qualify under either Trademark Rule 2.120(j) or 2.122(e) may be made of record "with appropriate identification and introduction by the witness during the course of [a live testimony] deposition." TBMP § 702.02. However, documents and other exhibits may not be introduced in connection with the declaration or affidavit of a witness unless the parties have mutually agreed to accept same in lieu of testimony. *See* Trademark Rule 2.123(b); *Tri-Star Marketing LLC v. Nino Franco Spumanti S.R.L.*, 84 USPQ2d 1912, 1914 (TTAB 2007) ("a declaration cannot be submitted in lieu of a testimony deposition absent a stipulation of the parties"); and TBMP § 703.01(b). Here, the parties have not stipulated that Ms. Tumen's declaration may be submitted in lieu of her testimony deposition; therefore it has not been considered. Further, the accompanying exhibits, i.e., advertising materials from Peru, do not qualify as evidence introduced during the course of a "deposition" and are not considered as such.

Even assuming that Ms. Tumen's declaration could be viewed as operating in a manner analogous to a notice of reliance, the exhibit materials attached to Ms. Tumen's declaration are not of the type that would be admissible thereunder. First,

---

[6] Documents obtained through disclosure may also be offered as exhibits in connection with the taking of an adversary's discovery deposition, and both disclosure documents and documents received under Fed. R. Civ. P. 34 may be introduced during taking of the testimony of an adversary, the obtained documents introduced as exhibits. TBMP § 704.11.

the parties have not stipulated to admission of the exhibits that are attached to Ms. Tumen's declaration. Second, the documents are not answers to interrogatories produced by a party during discovery which are being introduced by its adversary pursuant to Trademark Rule 2.120(j). They are also not official records or printed publications under Trademark Rule 2.122(e), which is specific as to what type of material qualifies as an "official record" or "printed publication." Promotional material generated by an applicant, labels or hang tags applied to the goods, or similar advertising materials do not qualify as such. Nor does treating the declaration as if it were itself submitted via a notice of reliance render it admissible. The declaration does not qualify as an official record or printed publication "available to the general public in libraries or of general circulation among members of the public or that segment of the public which is relevant under an issue in a proceeding."[7] Thus, neither the declaration nor the advertising materials are admissible.

Applicant argues that it should be allowed to supplement its discovery responses, served in response to opposer's request for production of documents, pursuant to Fed. R. Civ. P. 26(e)(1). That rule requires that a party supplement its responses when it learns of "additional or corrective information that has not otherwise been made known to the other parties during the discovery process or in writing." Applicant argues that it is required by law to supplement its responses "regardless of whether such supplementation is done in conjunction with a Notice of Reliance by the acting party" and prays that "the supplemental materials submitted

---

[7] Trademark Rule 2.122(e).

pursuant to Rule 26 be admitted of record."[8] In its main trial brief, applicant further argues that because opposer supplemented its initial disclosures during its testimony period, applicant should likewise be allowed to supplement its responses as part of its supplementation to its initial disclosures.[9]

Applicant misapprehends the rule. It is true that Fed. R. Civ. P. 26(e)(1) charges parties with a duty to supplement their discovery responses. But this does not make whatever supplemental material is produced of record in the case. To the contrary, supplemental discovery responses, like all discovery, should not be filed with the Board, "except when submitted with a motion relating to disclosure or discovery, or in support of or in response to a motion for summary judgment, or under a notice of reliance, when permitted, during a party's testimony period." Trademark Rule 2.120(j)(8). None of the exceptions in Trademark Rule 2.120(j)(8) applies to applicant's submission. Thus, although applicant is correct that it is required to supplement its disclosures and serve the materials on opposer, applicant's supplemental discovery material is not thereby made of record in this proceeding.

For these reasons, we have given Ms. Tumen's declaration and the accompanying exhibits no further consideration.[10]

---

[8] Applicant's Reply to Motion to Strike Supplemental Evidence, p. 3.
[9] Applicant's Brief, p. 3. Although applicant invokes its duty to supplement its "initial disclosures," it is applicant's duty to supplement its responses to discovery requests that is at issue herein, because the evidence that applicant seeks to admit was submitted in response to opposer's requests for production of documents.
[10] We note, in any event, that the advertising materials appear to be available in Peru only, and not in the United States. Accordingly, they have no probative value.

7

Opposer also raised objections to evidence submitted by applicant under a notice of reliance, filed on July 26, 2012, after applicant's testimony period closed. Applicant seeks to introduce a printout from the prosecution history of its trademark application, and a copy of the discovery deposition taken under Fed. R. Civ. P. 30(b)(6) of one of its principals, Mr. Lozano-Perez.[11] In its brief, opposer objected to the evidence as untimely.[12] While the prosecution history of applicant's trademark application is automatically of record under Trademark Rule 2.122(b)(1), absent stipulation of the parties approved by the Board, or upon motion granted by the Board, or by order of the Board, discovery depositions are not automatically of record, but rather must be timely submitted during a party's testimony period. *See* Trademark Rule 2.121(a). In view thereof, we have given the Lozano-Perez deposition no further consideration. However, as noted *infra,* portions of the deposition are of record, having been properly submitted by opposer during its testimony period; these have been considered.

## The Record

Pursuant to Trademark Rule 2.122(b), the record includes applicant's application file and the pleadings. In addition, the record consists of copies of opposer's pleaded registrations and trademark application Serial No. 85509647 for the mark JOEL GOTT for water beverages, as well as a copy of an Office Action from that file. Opposer has also introduced, under notice of reliance, copies of third-party registrations and Internet printouts, including printouts from opposer's

---

[11] Applicant also resubmitted copies of Ms. Tumen's declaration and accompanying exhibits.
[12] See TBMP § 702.02(b)(1) and cases cited therein (objections on ground of untimeliness may be raised in adverse party's brief on the case).

website; copies of Certificates of Label Approval ("COLAs") issued by the Alcohol Tobacco Tax and Trade Bureau ("TTB") of the U.S. Department of Treasury; applicant's responses to certain of opposer's interrogatories and excerpts of the Fed. R. Civ. P. 30(b)(6) deposition of Mr. Lozano-Perez. Opposer has also made of record the testimony depositions of Mr. Joel Gott, opposer's Managing Member, and Ms. Kirsten Hampton Brown, an employee of opposer. Each deposition transcript is accompanied by attached exhibits. In light of our rulings above on applicant's trial submissions, applicant has provided no admissible evidence or testimony.

## Standing

Because opposer has properly made its pleaded registrations of record, showing opposer as owner and that the registrations are subsisting, opposer has established its standing. *Cunningham v. Laser Golf Corp.,* 222 F.3d 943, 55 USPQ2d 1842, 1844 (Fed. Cir. 2000); *Lipton Industries, Inc. v. Ralston Purina Co.,* 670 F.2d 1024, 213 USPQ 185, 189 (CCPA 1982). *See also, Otter Products LLC v. Baseonelabs LLC,* 105 USPQ2d 1252, 1254 (TTAB 2012) ("We find that Opposer's Supplemental Register Registration is sufficient to establish opposer's real interest in this proceeding.").[13]

## Priority

Because opposer's pleaded registrations are subsisting and show opposer as the owner, priority is not at issue in this case as to the marks, GOTT and JOEL

---

[13] Applicant's argument that opposer's filing of unpleaded application Serial No. 85465193, for the mark GOTT for water beverages, is a "subterfuge and fraud" is misplaced. Whether or not opposer pleaded this application, opposer has established its standing. Moreover, the application is not of record in this case and we have given it no further consideration.

GOTT, and the goods covered by the registrations, namely, "wine." *King Candy Co. v. Eunice King's Kitchen, Inc.,* 496 F.2d 1400, 182 USPQ 108, 110 (CCPA 1974) (absent a petition to cancel opposer's cited registration, an applicant cannot, in an opposition proceeding, challenge opposer's priority as to the mark and goods in the cited registration). *See also, Otter Products,* 105 USPQ2d at 1254 (owner of Supplemental Register registration need not establish priority in order to prevail on its claim under Section 2(d)). Because opposer's registration for the mark GOTT issued on the Supplemental Register, while opposer need not establish priority of use of its mark GOTT to prevail on its claim of likelihood of confusion with respect to the mark, opposer must still establish ownership of a proprietary interest in the mark by competent evidence. *Otter Products,* 105 USPQ2d at 1255 ("'opposer must prove he has proprietary rights in the term ....'") (*citing Otto Roth & Co., Inc. v. Universal Foods Corp.,* 640 F.2d 1317, 209 USPQ 40, 43 (CCPA 1981)). Further, because opposer's registration is on the Supplemental Register, opposer must prove that it acquired such proprietary interest in its mark before applicant's first use date (which in this case is its constructive use date). In other words, opposer must establish that its proprietary interest in the mark GOTT is superior to applicant's interest in its mark GOTT LIGHT.

Because applicant has not submitted evidence of earlier use, the first use date on which it can rely is the filing date of its application, i.e., February 24, 2010. Opposer has shown its superior proprietary rights in its mark well before that date. Opposer's principal, Joel Gott, testified that opposer has continuously used the

10

mark GOTT for wine since 2005;[14] that since 2006 opposer has sold over 9.5 million bottles of wine labeled with the marks GOTT and JOEL GOTT with total dollar sales of over $73 million;[15] and that opposer has advertised its GOTT wine through "press stories," brochures, and print advertising, as well as through in-store advertisements such as "shelf talkers," bottle display cards, tasting notes and tasting cards.[16] Opposer's GOTT brand wine has also received unsolicited media attention.[17] In addition, opposer's submission of evidence showing its use of the mark GOTT on wine labels (authenticated during Mr. Gott's deposition) further establishes opposer's proprietary rights in its mark. Thus, opposer has established its superior proprietary interest in its mark GOTT before applicant's filing date of February 24, 2010.[18]

We now turn to a consideration of the issue of likelihood of confusion under Section 2(d) of the Trademark Act, 15 U.S.C. § 1052(d). Opposer must establish that there is a likelihood of confusion by a preponderance of the evidence.

Applicable Law

Our determination under Trademark Act § 2(d) is based on an analysis of the probative facts in evidence that are relevant to the factors bearing on a likelihood of

---

[14] Gott dep., p. 7.

[15] *Id.*, p. 27.

[16] *Id.*, exhibit Nos. 8-14.

[17] For example, *Wine Enthusiast Magazine* reviewed a GOTT wine, vintage 2007, in April 2011. *Id.*, exhibit No. 6. A 2006 GOTT vintage was reviewed in Robert Parker's Wine Advocate #186 in 2009. *Id.*, exhibit No. 7.

[18] Opposer relies on its common law rights and its Supplemental Register registration of the mark GOTT, but even if opposer were only to have relied on its common law rights, we would find that it has shown a superior proprietary interest in the mark through its actual use dating from 2005, its significant sales and advertising and the unsolicited media attention directed to GOTT brand wine.

confusion. *See In re E.I. du Pont de Nemours & Co.,* 476 F.2d 1357, 177 USPQ 563 (CCPA 1973). *See also Palm Bay Imp., Inc. v. Veuve Clicquot Ponsardin Maison Fondee En 1772,* 396 F.3d 1369, 73 USPQ2d 1689 (Fed. Cir. 2005); *In re Majestic Distilling Co., Inc.*, 315 F.3d 1311, 65 USPQ2d 1201 (Fed. Cir. 2003); and *In re Dixie Rests. Inc.,* 105 F.3d 1405, 41 USPQ2d 1531 (Fed. Cir. 1997). In considering the evidence of record on these factors, we keep in mind that "[t]he fundamental inquiry mandated by Section 2(d) goes to the cumulative effect of differences in the essential characteristics of the goods and differences in the marks." *Federated Foods, Inc. v. Fort Howard Paper Co.,* 544 F.2d 1098, 192 USPQ 24, 29 (CCPA 1976). *See also In re Azteca Rest. Enters., Inc.,* 50 USPQ2d 1209 (TTAB 1999).

A.    <u>Comparison of the Marks</u>

In comparing the marks, we must consider the marks in their entireties as to appearance, sound, connotation and commercial impression, to determine the similarity or dissimilarity between them. *Palm Bay,* 73 USPQ2d at 1692. The test, under the first *du Pont* factor, is not whether the marks can be distinguished when subjected to a side-by-side comparison, but rather whether the marks are sufficiently similar in terms of their overall commercial impression that confusion as to the source of the goods offered under the respective marks is likely to result. *See, e.g., Coach Servs., Inc. v. Triumph Learning LLC*, 668 F.3d 1356, 101 USPQ2d 1713, 1721 (Fed. Cir. 2012) ("The proper test is not a side-by-side comparison of the marks, but instead 'whether the marks are sufficiently similar in terms of their commercial impression' such that persons who encounter the marks would be likely to assume a connection between the parties.")

Because the similarity or dissimilarity of the marks is determined based on the marks in their entireties, the analysis cannot be predicated on dissecting the marks into their various components; that is, the decision must be based on the entire marks, not just part of the marks. *In re National Data Corp.,* 753 F.2d 1056, 224 USPQ 749, 751 (Fed. Cir. 1985). On the other hand, different features may be analyzed to determine whether the marks are similar. *Price Candy Company v. Gold Medal Candy Corporation,* 220 F.2d 759, 105 USPQ 266, 268 (CCPA 1955); *In re National Data Corp.,* 224 USPQ at 751 (nothing improper in giving more or less weight to a particular feature of a mark, provided the ultimate conclusion rests on a consideration of the marks in their entireties). The focus is on the recollection of the average purchaser, who normally retains a general rather than a specific impression of trademarks. *See Sealed Air Corp. v. Scott Paper Co.,* 190 USPQ 106 (TTAB 1975).

Bearing these principles in mind, opposer's marks are GOTT and JOEL GOTT. Of these, the closest in similarity to applicant's mark GOTT LIGHT is the mark GOTT. Because the design features in applicant's mark are insignificant background elements, applicant has essentially appropriated registrant's mark GOTT without adding any other distinguishing features. Applicant's mark is a combination of opposer's mark GOTT, the additional term LIGHT, and a background design consisting of a rectangular "carrier" and a wave design. As the first and most prominent term in applicant's mark, GOTT is the portion most likely "to be impressed upon the mind of a purchaser and remembered." *Presto Products,*

*Inc. v. Nice-Pak Products, Inc.*, 9 USPQ2d 1895, 1897 (TTAB 1988). *See also, Palm Bay,* 73 USPQ2d at 1692. The remaining word, LIGHT, appears in smaller and all lower-case letters, in contrast to the lettering style of the word "GOTT," which is displayed in large letters with the first letter capitalized. Moreover, the term "light" is merely descriptive of a characteristic of applicant's goods, either meaning that they are "low in calories, especially containing less than the usual amount of sugar or fat,"[19] or containing less than the usual amount of minerals and by-products. Opposer provided copies of several Internet websites wherein the term "light" was used to describe spring or mineral water. *See, e.g.,* at www.finewaters.com, an advertisement for Badoit brand water as "a light natural sparkling mineral water"; at http://www.midasspring.com, an article about Midas water: "It is considered a 'light' mineral water"; and at www.qafshtama.com, an advertisement for Qafshtama brand water as "being a very light water but also with a rich and equilibrate mineral composition."[20] The term LIGHT is disclaimed in the application and merely provides descriptive information about applicant's products. For these reasons, it is the subordinate portion of the mark, less likely to be perceived as a distinguishing element of the mark. *See In re Dixie Rests.*, 41 USPQ2d at 1533-34 (disclaimed word "café" is less significant when comparing marks); *National Data,* 224 USPQ at 752 ("a descriptive component of a mark may be given little weight"). *See also In re Chatam Int'l Inc.,* 380 F.3d 1340, 71 USPQ2d 1944, 1946 (Fed. Cir. 2004) (finding JOSE GASPAR GOLD "nearly identical" to GASPAR ALE once the

---

[19] *See* the excerpt from the Encarta® World English Dictionary (North American Edition 2009), attached to the first Office action dated May 28, 2010, at http://encarta.msn.com.
[20] Exhibit Nos. 4, 6, and 7; opposer's Notice of Reliance.

commercial significance of the descriptive and otherwise non-dominant terms JOSE, GOLD and ALE are properly discounted).

As for the design element, it does not create a separate commercial impression but serves merely as a carrier for the words. Further, even if we were to consider the wave design as creating a separate impression, it is of less significance than the dominant feature, GOTT; moreover, as a water feature, the ocean wave imagery reinforces the connection to applicant's goods as water beverages and related goods. In the case of marks consisting of words and a design, the words are normally given greater weight because they would be used by consumers to request the products. *In re Dakin's Miniatures, Inc.,* 59 USPQ2d 1593, 1596 (TTAB 1999); *In re Appetito Provisions Co.,* 2 USPQ2d 1553, 1554 (TTAB 1987). *See also, In re Viterra,* 671 F.3d 1358, 101 USPQ2d 1905, 1911 (Fed. Cir. 2012) ("the literal component of brand names likely will appear alone when used in text and will be spoken when requested by consumers") (*citing Dakin's Miniatures, Inc., supra*). For the reasons we have given, that principle is applicable to applicant's mark.

The marks GOTT and are similar in sight, sound, meaning and overall commercial impressions. They are similar in sight and sound because of the shared term GOTT. They are similar in meaning, whether GOTT means "God," as argued by applicant (and not disputed by opposer), or would be perceived as a surname (it is the last name of one of opposer's witnesses). Given the dominance of the term GOTT in applicant's mark, and the fact that it is the entirety of opposer's mark, the marks are also similar in their overall commercial impressions.

15

Likewise, the marks JOEL GOTT and are similar. Because they each contain the same term GOTT, they are similar in appearance and pronunciation. The addition of a first name (JOEL) in opposer's mark simply emphasizes the fact that GOTT connotes a person's name, i.e., an individual whose full name is JOEL GOTT. The marks also engender similar commercial impressions. The *du Pont* factor regarding the similarity of the marks favors a finding of likelihood of confusion.

B.  <u>Relatedness of the Goods; Trade Channels; Classes of Purchasers</u>

We next consider the similarity or dissimilarity, and nature of, the goods described in the application and registrations, basing our evaluation on the identifications of the goods as listed therein. *Octocom Systems, Inc. v. Houston Computers Services Inc.*, 918 F.2d 937, 16 USPQ2d 1783, 1787 (Fed. Cir. 1990). *See also Hewlett-Packard Co. v. Packard Press Inc.*, 281 F.3d 1261, 62 USPQ2d 1001 (Fed. Cir. 2002). It is settled that it is not necessary that the respective goods be identical or even competitive in order to find that they are related for purposes of our likelihood of confusion analysis. That is, the issue is not whether consumers would confuse the goods themselves, but rather whether they would be confused as to the source of the goods. *See In re Rexel Inc.*, 223 USPQ 830 (TTAB 1984). The goods need only be sufficiently related that consumers would be likely to assume, upon encountering the goods under similar marks, that the goods originate from, are sponsored or authorized by, or are otherwise connected to the same source. *See*

16

*In re Martin's Famous Pastry Shoppe, Inc.*, 748 F.2d 1565, 223 USPQ 1289 (Fed. Cir. 1984); *In re Melville Corp.,* 18 USPQ2d 1386 (TTAB 1991).

Opposer has submitted marketplace evidence to demonstrate that wine and water are related goods, as well as copies of use-based, third-party registrations showing that the goods are of the type that would emanate from a single source. Opposer's witness, Ms. Hampton[21] testified that she purchased several different brands of water from different winery tasting rooms. Photos of the water bottles that she purchased are attached as exhibits to her deposition; each one bears the name of the winery at which wines under the same brands are sold. For example, Ms. Hampton testified that she purchased a bottle of water while at the tasting room of the Flora Springs Winery that bears the mark FLORA SPRINGS and that FLORA SPRINGS wine was also available in the tasting room. She further testified that she purchased a bottle of water from the Clos du Val Winery in Napa Valley bearing the mark CLOS DU VAL; while there, she saw wine available for purchase under the brand name CLOS DU VAL. She "picked up" a bottle of water from the Alpha Omega winery that bears the marks ALPHA OMEGA and a stylized "A/O" logo; wine was also for sale at the winery, according to Ms. Hampton's testimony, bearing the ALPHA OMEGA mark and the A/O logo. Ms. Hampton also testified that she picked up a bottle of water from the Rombauer Winery bearing the label "Rombauer Vineyards, Napa Valley," and that wine was also available for sale

---

[21] Although the witness identified herself as Kirsten Hampton Brown, she was addressed as Ms. Hampton throughout the deposition. We have done the same herein.

at the winery under the ROMBAUER name.[22]  This testimony suggests that the goods are related.

The use-based, third-party registrations, although not evidence that the marks shown therein are in use or that the public is familiar with them, nonetheless also have probative value to the extent that they serve to suggest that the goods listed therein are of a kind which may emanate from a single source under a single mark.[23]  *In re Infinity Broad. Corp.*, 60 USPQ2d 1214, 1217-18 (TTAB 2001); *In re Mucky Duck Mustard Co.*, 6 USPQ2d 1467, 1470 n.6 (TTAB 1988) *aff'd*, 864 F.2d 149 (Fed. Cir. 1988).  *See also, In re Albert Trostel & Sons Co.,* 29 USPQ2d 1783, 1785 (TTAB 1993); TMEP § 1207.01(d)(iii) (October 2012). Overall, the evidence strongly favors a finding of likelihood of confusion with respect to the *du Pont* factor regarding the relatedness of the goods.

Regarding the channels of trade and classes of purchasers, because there are no limitations as to channels of trade or classes of purchasers in the description of goods of either opposer's registrations or applicant's application, it is presumed that the goods move in all channels of trade normal for those goods, and that they are available to all classes of purchasers for those goods.  *See Paula Payne Products Co. v. Johnson Publishing Co.,* 473 F.2d 901, 177 USPQ 76 (CCPA 1973); *Kalart Co. v. Camera-Mart, Inc.,* 258 F.2d 956, 119 USPQ 139 (CCPA 1958); *In re Linkvest S.A.,* 24 USPQ2d 1716, 1716 (TTAB 1992).  Furthermore, opposer has shown that both

---

[22] Photographs of the bottles of water are shown at Exhibit Nos. 1, 5, 7, and 9 to Ms. Hampton's testimony deposition.  Pictures of the wine bottles, taken from various websites, were identified by Ms. Hampton as being identical to those she saw at the wineries; they display labels bearing the same marks as the water bottles.
[23] Opposer's Notice of Reliance, exhibit No. 19 contains copies of third-party registrations.

parties' goods are or will be marketed to similar retail markets such as grocery stores, and "big box" stores. Opposer's venues include Safeway, Wal-Mart and Costco;[24] Mr. Lozano-Perez, applicant's witness, stated that applicant intends to sell its water in supermarkets.[25] We recognize that merely because goods can both be sold in a large store such as a supermarket or box store would not alone be sufficient to show that consumers would be likely to encounter both in a shopping trip, or assume a common source merely because both types of goods can be found in such a store. However, the evidence shows that the goods can be sold in the same areas of these stores. Thus, applicant's argument that wine is sold in "the appropriate liquor sales section of a retail outlet" while water is sold in a different section of the store is contradicted by the evidence provided by opposer; in addition to Ms. Hampton's testimony, Mr. Gott testified that he conducts market visits to retailers where opposer's wine is sold, and that he has seen water sold in the same section of the store as where opposer's wine is sold.[26] Opposer has also provided copies of the online beverage menus from restaurant websites, showing that restaurants offer both water and wine for sale in the same menu section.[27] Other website printouts submitted by opposer are for online recipes describing how to

---

[24] Gott dep., pp. 25-26.

[25] Lozano-Perez dep., p. 30. Portion submitted by opposer.

[26] Gott dep., p. 27.

[27] For example, Lucky Lou's "Drink List" includes wines and bottled water--at www.luckylousbarandgrillcom; the Crab Shell Seafood Restaurant's beverage menu offers various wines, beers, and waters--at www.crabshell.com; and Renee's Place offers a full listing of wines, beers, organic teas, and bottled waters--at www.reneesplacerestaurant.com. Attached as exhibit Nos. 25, 27, and 28 to opposer's Notice of Reliance.

make popular drinks such as wine spritzers using wine and water as ingredients;[28] and an article from thenibble.com website entitled "The Water Menu, Matching Food to Water is a Hot New Trend," which describes wine and water pairing and food and water pairing.[29] In view thereof, opposer has shown that the parties' identified goods are related products sold through the same trade channels to the same classes of customers.

Accordingly, these *du Pont* factors weigh in favor of a finding of likelihood of confusion.

C.    Balancing the factors.

Applicant's mark is for various water beverages. Opposer's marks are JOEL GOTT and GOTT for wine. Applicant's mark, dominated by the word GOTT, is similar to opposer's marks GOTT and JOEL GOTT in sight, sound, meaning and overall commercial impression. The additional elements of applicant's mark are of less significance and do not serve to distinguish applicant's mark from opposer's marks. The word "light" is merely descriptive and the design features serve primarily as background to carry the words. As for the goods, they have been shown to be related, to move through the same channels of trade and to be available to the same classes of consumers. Purchasers of opposer's GOTT and JOEL GOTT wines are likely to assume that applicant's goods, sold under the mark GOTT LIGHT and design, are merely a line extension of goods emanating from opposer.

---

[28] Opposer's Notice of Reliance, exhibit Nos. 21-23.
[29] *Id.*, exhibit No. 24.

For these reasons, we find that applicant's registration of the mark is likely to cause confusion with opposer's previously used and registered marks GOTT and JOEL GOTT under Section 2(d) of the Trademark Act, 15 U.S.C. § 2(d).

**Decision**: The opposition is sustained. Accordingly, we need not reach opposer's alternative ground for opposition, i.e., whether applicant had a *bona fide* intent to use its mark at the time it filed the application.